### CARLISLE TIRE & RUBBER CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 9620.

Circuit Court of Appeals, Third Circuit.

Argued May 4, 1948.

Decided May 28, 1948.

S. Leo Ruslander, of Pittsburgh, Pa. (Julian Ruslander and Jerome B. Lieber, both of Pittsburgh, Pa., on the brief), for petitioner.

Austin Hoyt, of Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., and Sewall Key and George A. Stinson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before McLAUGHLIN and O'CON-
NELL, Circuit Judges, and RODNEY,
District Judge.

O'CONNELL, Circuit Judge.

The Commissioner has asserted and the
Tax Court has found a deficiency in peti-
tioner's excess profits tax return for the
year 1943. The instant appeal raises three
questions: (1) Whether petitioner, hav-
ing entered into a written compromise
agreement with the Commissioner concern-
ing indebtedness on excise taxes due the
government, was, pursuant to the terms of
such agreement, entitled to deduct, as an
expense, interest accrued but not paid on
the original amount of said excise taxes;
(2) whether the Tax Court erred in ex-
cluding evidence which petitioner offered,
to the effect that certain employees in the
Philadelphia office of the Collector of In-
ternal Revenue construed the compromise
agreement to require such payment of in-
terest; and (3) whether petitioner could
treat as invested capital the difference be-
tween the amount which petitioner owed a
non-stockholder creditor and that which
petitioner actually paid in settlement of the
creditor's claim. All three questions were
resolved against petitioner by the Tax
Court.

Petitioner, a manufacturer of tubes for
automobile tires, owed excise taxes in the
sum of $257,555.05. Unable to pay this lia-
bility, petitioner, on July 15, 1941, prepared
on a government form a written "Offer in
Compromise," to which was attached a
financial statement indicating liabilities well
in excess of the fair market value of the
assets of petitioner. By letter dated April
14, 1942, the Commissioner accepted the of-
fer as made. The agreement provided that
petitioner, in discharge of its excise tax
liability, was to pay 20% of its "annual net
income for the next five years payable an-
nually as determined for federal income tax
purposes but after federal income taxes due
for each of the five years have been deduct-
ed." It was further provided that accrued
interest would be payable (a) in the event
that the property of petitioner was sold dur-
ing the term of the agreement, and the
amount realized beyond mortgage indebted-
ness permitted full payment of the tax orig-

inally due, or (b) if the 20% payments in
less than five years attained the total
amount of the tax due the goverment.
These provisions, attached as a rider to, and
incorporated by reference in a paragraph
of, the "Offer in Compromise" form, ap-
parently supplanted the following language
which was deleted from the printed form:
"together with interest at the rate of 6%
per annum on all deferred payments from
the date this offer is received by the col-
lector until the respective payments are
made in full."

The next-to-last paragraph of the Com-
missioner's letter states that petitioner
agrees to the waiver of refunds and all oth-
er conditions contained in the "Offer in
Compromise," "except the payment of inter-
est on the payments made under the terms
of this agreement."

Twenty per cent of the "annual net in-
come" of petitioner, as defined in the com-
promise agreement, for the years 1941 to
1945 inclusive, is $61,747.65. Petitioner has
paid $43,662.21 to the government, the re-
mainder being deposited in escrow in a
Carlisle, Pennsylvania, bank during the
pending litigation.

Keeping its records on the accrual basis,
petitioner neither accrued on its books and
records nor claimed on its 1941, 1942, or
1943 tax returns any sum alleged to repre-
sent interest due on the excise tax which
had been the subject of the compromise
agreement. Petitioner now takes the posi-
tion that the settlement agreement does re-
quire the payment of interest; that both pe-
titioner and the Commissioner so interpret-
ed the agreement; and that partial pay-
ments made in accordance with the agree-
ment must first be credited to interest.

We agree with the Tax Court that
this compromise agreement eliminates the
interpretation for which petitioner here
contends. The striking of the printed lan-
guage on the compromise form, the para-
graph of the Commissioner's letter except-
ing the payment of interest, the setting forth
of two contingencies requiring the payment
of interest, plus the nature of the agreement
itself, are consistent only with the interpret-
tation enunciated in the memorandum opin-
ion of the Tax Court. The pattern of the

settlement was to permit petitioner to continue in business by requiring the payment of only a specified percentage of its net income for five years to be allocated to the excise tax, and to assure that in no event would petitioner pay a tax greater than that which would have been due had no settlement intervened. We believe that the reasoning of the Tax Court is sound and requires no further elaboration.

■ Moreover, the contention of petitioner that the settlement was treated by the parties as contemplating the payment of interest in some situation other than the two express contingencies, neither of which occurred, is not supported by the record before us. Petitioner for a period of three years failed to take any action indicating that petitioner so interpreted the agreement. The offer of proof which the Tax Court excluded could at best have shown that certain employees in the Collector's office agreed with the interpretation now advanced by petitioner. Such testimony, besides encountering inhibitive rules of evidence, still lacked the necessary link of showing the opinions of those employees to represent that of the Commissioner, who had made the agreement. Exclusion of the proffered testimony did not constitue reversible error.

■■ The final question for our determination arises out of the settlement of a debt which petitioner owed to a New York importing and brokerage company for rubber purchases, rubber wash sales, and interest. By a cash payment of $50,000 in 1932, petitioner was released of its debt totalling $550,598.10. This transaction was recorded on the books of petitioner by crediting $47,658.42 to "Profits and Loss", since that sum represented purchases from the importer-broker in 1932, and $452,939.68 to "Surplus". Petitioner did not treat this

forgiveness of indebtedness for income tax purposes as realization of income. The Commissioner excluded the $452,939.68 from equity invested capital, of which action the Tax Court approved on the strength of Liberty Mirror Works v. Commissioner, 1944 3 T.C. 1018.

"Equity invested capital" is defined in Section 718 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 718.[1] Petitioner urges that sound accounting practice calls for crediting the forgiven debt to paid-in surplus, that such credit is a true "paid-in surplus", and that no distinction should be made between contributions by stockholders and those by non-stockholders such as the importer-broker.

The question presented by petitioner is not without difficulty. The record does not disclose how the importer-broker creditor, a concern in financial difficulties, treated the transaction. At the hearing, little if any testimony was adduced to indicate what would be considered established accounting practice for such a transaction; and neither the language of the statute and applicable Treasury regulation nor the legislative history are greatly illuminating in ascertaining whether "equity invested capital" includes a debt forgiveness by a non-stockholder creditor. We have found no appellate decision on this precise issue. If, however, accounting practice is to be used as our guide, as urged by petitioner, we must turn to the Tax Court, particularly in the absence of other controlling judicial interpretations, as the body whose determination is to be accorded great weight in such matters. Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. Since the decision in the Liberty Mirror case, supra, the Tax Court consistently has taken a position construing purported additions to equity invested capital to exclude such transactions as that here

---

[1] The pertinent portion of Section 718 reads as follows:

"§ 718. Equity invested capital

"(a) Definition. The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

"(1) Money paid in. Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

"(2) Property paid in. Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon the sale or exchange. * * *"

involved. See Doylestown and Easton Motor Coach Co. v. Commisssioner, 9 T.C. 846; McKay Products Corp. v. Commissioner, 9 T.C. 1082; Brown Shoe Co., Inc., v. Commissioner, 10 T.C. 291; and Walgreen, Inc., v. Commissioner, 10 T. C. ——. Cf. Montgomery's Federal Taxes— Corporations and Partnerships, 1946-47, Vol. II, page 369. On the facts of the case before us, consequently, we accept the conclusion that the $452,939.68, for excess profits tax purposes, could not be considered equity invested capital.

For the reasons stated, the decision of the Tax Court will be affirmed.