COMMISSIONER OF INTERNAL REVENUE v. PENN ATHLETIC CLUB BLDG. et al.

No. 9834.

United States Court of Appeals Third Circuit.

Argued April 5, 1949.

Decided Sept. 29, 1949.

940

Sumner M. Redstone, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, Lee A. Jackson, Special Assistants to Attorney General, on the brief), for petitioner.

Sanford D. Beecher, Philadelphia, Pa. (Duane, Morris & Heckscher, Philadelphia, Pa., on the brief), for respondent.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The principal issue presented by the Commissioner's petition to review the decision of the Tax Court is whether the taxpayer, Girard Trust Company ("Girard"), held the property here involved as an owner in fee or as a mortgagee in possession. If Girard held as an owner in fee, rents received were includable in its gross income. If it held as a mortgagee in possession, the rentals were, of course, simply a return of capital to be applied in reduction of the mortgage debt and were not taxable as income.

The Tax Court found (five judges dissenting) that Girard held as a mortgagee in possession and not as owner.[1] The facts as found by the Tax Court may be summarized as follows:

The Penn Athletic Club of Philadelphia ("Penn") was organized under the laws of Pennsylvania on October 31, 1922. On September 15, 1924, Penn purchased a plot of ground for the purpose of erecting a clubhouse, and contemporaneously organized the Rittenhouse Square Corporation

---

I. The findings of fact and opinion of the Tax Court are reported at 10 T.C. 919.

("Rittenhouse") for the purpose of holding title to the site. All of the stock of Rittenhouse was owned by Penn. On the date mentioned the real estate was conveyed to C. Benton Cooper ("Cooper"), a "straw man" who executed a mortgage to Girard as Trustee to secure an issue of $3,000,000 first mortgage bonds. The mortgage, in Article VI, provided, among other remedies, that, in case of default, Girard could enter on the property, lease it, and after deducting expenses including taxes, apply the moneys to the payment of principal and interest, and pay the balance to the mortgagor.

On September 25, 1924, Cooper conveyed the premises to Rittenhouse under and subject to the mortgage, and Rittenhouse utilized the proceeds from the sale of the bonds and from the sale of its own bonds to erect and furnish a clubhouse on the property here involved.

On September 25, 1924, Rittenhouse leased the premises to Penn for 25 years from March 1, 1926. Default on the mortgage occurred after March 15, 1932.

On December 1, 1936, Penn and Rittenhouse filed petitions for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207.

Following long drawn-out reorganization proceedings, the United States District Court for the Eastern District of Pennsylvania approved a plan pursuant to which Rittenhouse conveyed the clubhouse property to Penn and was dissolved, and Penn entered into a Supplemental Mortgage Agreement with Girard on January 30, 1940, which provided in Paragraph 14 that in the event of default by Penn for a period of a year, Girard might require conveyance of the property.

Late in 1941, Girard learned that the Securities and Exchange Commission ("S. E. C.") desired to lease the premises for a period of seven years subject to termination by it after three years. The S. E. C. sought immediate possession and suggested that Girard request conveyance from Penn, inasmuch as under the practice of the courts (Federal and State) a mortgagee in possession could otherwise not lease for more than a year.

On January 13, 1942, Girard wrote a letter to Penn requesting, in view of its default, conveyance of the mortgaged premises, subject to the lien of the mortgage, in accordance with the terms of Paragraph 14 of the Supplemental Mortgage Agreement. Subsequently, on January 19, 1942, a meeting was held with Penn's board of governors, and a transfer under the original and supplemental mortgages was discussed. A resolution was adopted by the officers of Penn providing for the conveyance of all real estate, buildings, etc., to Girard upon its execution of a release of all indebtedness due by Penn including tax liability and retention by Penn of $25,000 of the clubhouse furnishings. The resolution further provided that Girard satisfy Penn's current indebtedness to other creditors out of the proceeds of the balance of the furniture.

On January 21, 1942, pursuant to the resolution, Penn executed and delivered a bill of sale to Girard as trustee under the original and supplemental mortgage agreements, covering all the furnishings, except certain items valued at $25,000. On the same day, Penn executed a deed of conveyance to Girard covering the clubhouse property.

The deed designated the grantee as: "Girard Trust Company, of Philadelphia, Pennsylvania, a corporation organized and existing by virtue of the laws of the Commonwealth of Pennsylvania, *Trustee under Indenture of Mortgage dated September 15, 1924,* recorded on October 2, 1924, in the office for the Recording of Deeds in and for Philadelphia County, in Mortgage Book J. M. H. No. 3660, p. 427 *as modified by Supplemental Mortgage Agreement dated January 30, 1940,* recorded on March 8, 1940, in said Office for the Recording of Deeds in Deed Book D. W. H. No. 926, page 361, Grantee, of the second part." (Emphasis supplied.)

The habendum clause twice referred to Girard as "Trustee as aforesaid" and the text of the deed provided:

"Under and subject, nevertheless, to the lien of the aforesaid mortgage debt or principal sum of Two Million Five Hundred eighty Thousand Dollars ($2,580,-

000), together with interest accrued and to accrue thereon.

"*And it is expressly stipulated that it is not intended hereby to merge the interests of Girard Trust Company, as Trustee, in the said premises as mortgagee of the aforesaid mortgage, and as owner in fee of the said premises, but that the said mortgage shall be, remain and continue in full force and effect for all purposes as though the present conveyance had not been made.*" (Emphasis supplied.)

The granting clause stated that Penn: "has granted, bargained, sold, aliened, enfeoffed, released and confirmed and by these presents does grant bargain, sell, alien, enfeoff, release and confirm unto the said grantee * * *. Together with * * * all the estate right, title and interest, property, claim and demand whatsoever of it, the said Grantor as well at law as in equity, of, in and to the same and every part and parcel thereof."

On January 22, 1942, Girard executed a "Release from Mortgage and Tax Liability". The release stated that the action was taken "to permit the Trustee to enter into immediate lease of the mortgaged premises * * * and to permit the Trustee to become the owner of said mortgaged premises and the equipment, furniture and furnishings thereof, for all purposes whatsoever, under and subject however to the lien of said above recited mortgage * * *, the interest of the Trustee as owner not to become merged, however, with its interest as mortgagee."

. The release further relieved Penn of all indebtedness but stated that nothing should be held to impair the lien of the mortgage which might be asserted against Cooper or against any other than Penn. Subsequently, on January 26, 1942, Girard executed a lease of the premises to the United States for use by S.E.C.

A certificate executed by counsel for Girard and attached to the deed of January 26, 1942, the recording date, recited, inter alia, that " * * * the conveyance is being made under and subject to the mortgage indebtedness secured upon said premises and is not in lieu of foreclosure * * *."

By correspondence on April 29, May 2, and May 5, 1942, counsel for Girard and for Penn agreed that a perpetual insurance policy issued on the club building in 1926, and of a value of about $1,670, should be held by Girard as additional security until the mortgage indebtedness was satisfied, under Article IV, section 3 of the original mortgage, providing that insurance be carried and assigned to the mortgagee as additional security.

On May 22, 1942, Penn and Girard settled their accounts as of January 21, 1942, and executed an "Agreement of Mutual Release". The latter was intended to relate exclusively to the settlement of the accounts listed therein which covered adjustments of rentals, wages, taxes, etc., in connection with the operation of the premises.

On or about October 8, 1942, Girard filed an accounting as *mortgagee in possession* with the Court of Common Pleas of Philadelphia County and petitioned the Court to confirm and direct distribution in accordance therewith. The accounting was filed pursuant to an opinion rendered by Girard's counsel prior to the conveyance of January 21, 1942, that under its terms Girard was not absolute owner but mortgagee in possession and as such was required to account for any surplus above the debt. Due notice was given of the filing of the account and on November 13, 1942, the State Court confirmed the principal and income accounts and the "mortgagee in possession rent account". On May 16, 1946, Girard filed a second accounting with the Court of Common Pleas embracing the period from September 1, 1942, to March 2, 1946. Notice of filing of both accounts was given to Penn "because of their interest in any surplus or balance that may remain after the bonds and interest are paid off".

On July 12, 1946, Girard after being approached by parties interested in purchasing the club property, and with Penn's knowledge and consent, sent printed notices to various brokers giving notice in substance that it held title as *mortgagee in possession;* that bids would be received on September 18, 1946; that it was advised

that the manner, terms and conditions of the sale were subject to review and approval by the Court of Common Pleas. The property was not sold at that time.

It is the Commissioner's contention that the Tax Court erred as a matter of law in holding that Girard was not the owner of the premises involved and therefore was not taxable on the rentals therefrom. The crux of the Commissioner's position is that the deed from Penn to Girard conveyed a fee simple title under the Pennsylvania law and that under the latter a deed absolute in form cannot be shown to be a mortgage unless there is a written defeasance. The Commissioner further urges that the facts clearly show that Penn and Girard dealt with each other as buyer and seller and that Penn sold all of its rights in the property receiving in consideration not only a discharge of the debt but other valuable consideration.

Girard's position is that the issue here is simply whether the Tax Court committed reversible error in its fact finding that the conveyance was made pursuant to the provisions of Paragraph 14 of the Supplemental Mortgage Agreement. It contends that the record amply demonstrates that the Tax Court's determination of the facts was correct and that its holding was in accordance with the applicable law.

The Tax Court, as was stated at the outset of this opinion, ruled that Girard held as a mortgagee in possession. It did so "* * * After considering the deed itself, the concurrent instruments executed, the understanding and intent of the parties and their treatment of the matter, and the decree of the Court of Common Pleas * * *." 10 T.C. 945.

It is clear that the essence of the controversy between the parties in the Tax Court was the single fact question whether or not Girard took title under the Supplemental Mortgage Agreement. The dissenting judges in the Tax Court agreed that if the conveyance had been made as provided in Paragraph 14 of the Supplemental Mortgage Agreement they "would have no hesitancy in agreeing with the majority view

that petitioner (Girard) became a mortgagee in possession and, as such, was liable to account to the Club (Penn)."

However, they concluded that "the deed does not state that the conveyance was made pursuant to paragraph 14"; the conveyance was the result of independent bargaining between Penn and Girard whereby the former obtained $25,000 of club furnishings and release of all its obligations under the mortgage; the deed was absolute; and under the circumstances, "* * * the question of intention * * * is not a decisive factor * * *" as a matter of law. 10 T.C. 947.

■ It is our function merely to determine whether the Tax Court erred as a matter of law and whether its fact finding was "clearly erroneous". Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. (made applicable to the review of decisions of the Tax Court by Section 1141(a) of the Internal Revenue Code, 26 U.S.C.A. § 1141(a); United States v. United States Gypsum Co., 1948, 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746.

Upon consideration of the record, the Tax Court's detailed findings of fact and its exhaustive discussion of the testimony and the applicable law, we are of the opinion that the Commissioner has failed to establish (1) error of law or (2) such clear error of fact as would require reversal.

■ As was pointed out by the Tax Court, 10 T.C. 938, the deed contained "both ordinary expressions indicative of absolute conveyance and those relative to non-merger of interest and continuation of the mortgage" and was therefore "not unambiguous". Accordingly, as the Tax Court held, "evidence to explain" was properly admissible. That this is so in tax cases was ruled in Helvering v. F. & R. Lazarus & Co., 1939, 308 U.S. 252, 60 S.Ct. 209, 84 L.Ed. 226, which affirmed rulings by both the Board of Tax Appeals [2] and the Court of Appeals for the Circuit, Commissioner of Internal Revenue v. F. & R. Lazarus & Co.,[3] that a deed in fee simple with lease back was in effect a mortgage.

2. 32 B. T. A. 633.

3. 101 F.2d 728.

The Board of Tax Appeals, it should be noted, had considered and credited oral testimony explaining the intention of the parties in connection with the transaction. In affirming, the Supreme Court stated, 308 U.S. at page 255, 60 S.Ct. at page 210:

"In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding. Congress has specifically emphasized the equitable nature of proceedings before the Board of Tax Appeals by requiring the Board to act 'in accordance with the rules of evidence applicable in courts of equity of the District of Columbia.' Revenue Act 1928, § 601, 26 U.S.C. § 611, 26 U.S.C.A.Int.Rev.Acts, page 456."

■ Even prior to the ruling in the Lazarus case, we held in Tex-Penn Oil Co. v. Commissioner, 3 Cir., 1936, 83 F.2d 518, 522, 523, that in determining tax liability on contracts, extraneous evidence may be presented to determine the real agreement between the parties since "the rule is well settled that in determining tax liability, taxing authorities must look through form to fact and substance."[4]

■ It is well-settled that courts will carefully scrutinize any contract by which the mortgagor sells or releases his interest to the mortgagee, 19 R.C.L. 387; and evidence, written or oral, is admissible in order to ascertain the true intent of the assignment or conveyance. Peugh v. Davis, 1878, 96 U.S. 332, 24 L.Ed. 775.

■ The Commissioner, however, urges that the general principle that parol evidence is admissible to convert a deed absolute to a security arrangement or equitable mortgage is not applicable because of the Pennsylvania Act of June 8, 1881, P.L. 84, § 1, as amended, April 23, 1909, P.L. 137, § 1,[5] which he asserts is determinative of this case. He declares that under this section a deed absolute in form cannot be reduced to a mortgage except by proof of a written defeasance signed and delivered by the grantee.

The Pennsylvania decisions are contrary to the Commissioner's contention. In Williams v. Moodhard, 1941, 341 Pa. 273, 19 A.2d 101, the Supreme Court of Pennsylvania held that neither the Pennsylvania Statute of Frauds, 33 P.S. § 2, nor its Defeasance Act bars the title holder of real estate from establishing by parol evidence that he is not the real owner of the property. In view of the above it is clear then that the Tax Court did not commit error of law in considering "the understanding and intent of the parties".

Nor did the Tax Court err in its conclusion of law that in view of the fact that the deed provided for the continuance of the mortgage the right of redemption was preserved with the result that Girard's status was clearly as mortgagee in possession.

■ There remains only the question as to whether the fact finding appealed from was "clearly erroneous". On that score it perhaps need only be said that the finding of the Tax Court was supported by evidence which permitted at most conflicting inferences (as was evidenced by the contra fact finding of the minority of the Tax Court) and is therefore conclusive here. Helvering v. F. & R. Lazarus & Co., supra.

It would serve no useful purpose to restate in detail the evidence, oral and written, on which the Tax Court premised its finding that Girard was mortgagee in possession. That evidence was exhaustively detailed in the Tax Court's findings of fact and its opinion. Mention might be made, however, of the undisputed fact that Girard's counsel had advised it, immediately prior to the conveyance, that its status under it would be as mortgagee in possession, and further that it had so conduct-

---

4. The Tax Court has frequently adhered to this rule as appears from the cases cited in the majority opinion in this case.

5. The section provides in pertinent part: "No defeasance to any deed for real estate, regular and absolute upon its face, made after the passage of this act, shall have the effect of reducing it to a mortgage, unless the said defeasance is in writing, signed and delivered by the grantee in the deed to the grantor; * * *." 21 P.S. § 951.

ed itself in twice filing its accounts as mortgagee in possession in the Court of Common Pleas of Philadelphia and making distribution on the first account (no proof was adduced as to approval of the second account) in accordance with the decree of the State Court. The first account, it may be noted parenthetically, was filed in October, 1942, some two and a half years before the Commissioner filed his notice of deficiency against Girard.

For the reasons above stated the decision of the Tax Court will be affirmed.