## MARSHALL DRUG CO.. v. UNITED STATES. .

No. 47589.

United States Court of Claims.

Decided March 6, 1951.

J. S. Seidman, New York City, for plaintiff.

Joseph H. Sheppard, Washington, D. C., with whom was Asst. Atty. Gen. Theron Lamar Caudle, for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and HOWELL, MADDEN, WHITAKER and LITTLETON, Judges.

JONES, Chief Judge.

The issue here is whether cancellations of indebtedness constituted gifts to the debtor, as plaintiff claims, or taxable income, as defendant contends.

Plaintiff, a calendar year and accrual basis corporation, operates a chain of retail drug stores in and around Cleveland. In 1940, although its assets exceeded its current liabilities, plaintiff was operating at a loss and had been for all but one of the five preceding years, the result of inept management. To enable plaintiff to continue in business a plan of reorganization was evolved which included freezing all past due accounts as of October 14, 1940, and bringing in new management. Efforts were to be made to persuade creditors to convert their claims into five percent preferred stock, par value $100, on a dollar-for-dollar basis. To obtain additional working capital it was also proposed that the creditors should subscribe to additional preferred stock at par. The new management was to take over when a minimum of $500,000 par value of preferred stock was subscribed. On October 14, 1940, plaintiff owed 947 creditors the amount of $521,860; of this amount, $438,172.41 was converted into preferred stock. Many creditors also agreed to subscribe to additional preferred stock for cash. The reorganization plan became effective on February 3, 1941.

The creditors who did not convert their claims into stock were contacted by plaintiff's representatives by letter, in person, and by telephone in an effort to persuade them to contribute to the success of plaintiff's reorganization by cancelling a part of their claims. Trade creditors with face amount of claims of $10,838.79 refused to subscribe to preferred stock or accept reductions in their accounts. They were paid in full. However, trade creditors with face amount of claims of $72,848.80 were paid $46,696.11 and cancelled $26,151.69.[1] It is with these cancellations that this case is concerned.

---

1. The amount of $72,848.80 includes a $2,000 subscription to the Cleveland Community Fund for 1939 and 1940. In 1941 plaintiff paid $300, and the remaining $1,700 was cancelled. Because it had net losses in 1939 and 1940, plaintiff got no

In 1940, $5,823.69 was cancelled; in 1941, $19,780.34; in 1942, $547.66. Plaintiff reported these amounts as income in its tax returns for those years. Plaintiff had net operating losses in 1940 and 1941; in 1942 it had net income on which income and excess profits taxes were paid. If the amounts of the cancellations had not been reported as income, the gross income reported for 1942 would have been lower and the net operating losses for 1940 and 1941 would have been greater and so would the net operating loss deduction for 1942. Plaintiff filed claim for refund of 1942 taxes on the ground that the cancellations were gifts, and were not income, under the statute. The Commissioner of Internal Revenue allowed a portion of the claim in the sum of $2,531.25 on other grounds, but rejected the claim as to the balance.

The Internal Revenue Code, 26 U.S.C.A. provides:

§ 22. Gross income—(a) General definition.

" 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * *, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.

* * * * * *

"(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

* * * * * *

"(3) Gifts, bequests, devises, and inheritances. The value of property acquired by gift, bequest, devise, or inheritance.

* * * * * *"

In United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131, a corporation purchased in the open market at less than par some of its own bonds which it had sold at par. The difference was held to be taxable gain or income to the corporation since assets in that amount, which had previously been offset by the obligation of the bonds, had been made available to the corporation by its purchases. That amount, the Court held, was an accession to income.

Helvering v. American Dental Co., 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785, came later. In that case part of what a corporation owed on past due bills for merchandise, evidenced by interest-bearing notes, and back rent was cancelled by its creditors and credited by it to earned surplus. It was held under the facts of that case that the cancellations were tax-exempt gifts to the corporation, not income.

The latest expression of the Supreme Court on the subject was in Commissioner of Internal Revenue v. Jacobson, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477. There, an individual who was liable on some outstanding bonds bought them from the holders at less than their face value. The difference between what the taxpayer owed on the bonds and what he bought them in for was held to be taxable income, not a gift. The Court concluded that the bondholders had no intention of transferring or releasing something for nothing as distinguished from an intent to get the highest available price for their bonds. It was observed that the form of the transaction, while not conclusive, did emphasize the real nature of the bondholders' intentions.

The American Dental doctrine has thus been limited; it does not apply if the transaction is in fact a transfer of the obligation for the best price available. It does not apply, it seems to us, to the case at bar. The cancellations here were not intended to be gifts. Gifts as a rule are on a personal basis. Plaintiff's creditors were in business. When confronted with this situation, some of them converted their claims

tax deduction or tax benefit from the subscriptions in those years. Except for this item all of the $72,848.80 entered into plaintiff's computation of the cost of goods sold and income.

into preferred stock; a few insisted upon, and got, full payment; some cancelled part or all of their claims. These latter thought that full collection could not be made or, for one reason or another, was not worth while to seek. Some of them were motivated by the prospect of continued business with the reinvigorated Marshall Drug Co. The cancelling creditors accounted for the amounts cancelled not as charitable contributions or gifts but as bad debts. These were business dealings. Each cancellation was the result of a creditor's individual business judgment. It was not a gift. The result to plaintiff was an increase in its net worth. The cancellations clearly constituted income.

The petition is dismissed.

HOWELL, MADDEN, WHITAKER and LITTLETON, Judges, concur.