**CREAN BROS., Inc. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 10448.

United States Court of Appeals
Third Circuit.

Argued Nov. 13, 1951.

Filed March 17, 1952.

Kalodner, Circuit Judge, dissented.

Thorpe Nesbit, Philadelphia, Pa. (Logan Morris, Philadelphia, Pa., Nesbit, Morris & Lisenby, Philadelphia, Pa., on the brief), for petitioners.

Hilbert P. Zarky, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Special Assts. to the Atty. Gen., on the brief), for respondent.

Before MARIS, KALODNER and STALEY, Circuit Judges.

MARIS, Circuit Judge.

This petition by the taxpayer to review a decision of the Tax Court against it presents the question whether the taxpayer is entitled, under Section 718(a) (2) [1] of the Internal Revenue Code, to include the sum of $99,965.05 in its equity invested capital for the purpose of computing the tax on its excess profits for the year 1945. This sum represented an indebtedness owing from the taxpayer to Hudson Coal Company which that company had gratuitously cancelled in 1938. Hudson Coal Company was the majority stockholder of the taxpayer's principal stockholder. The facts are stated in the opinion of the Tax Court, 15 T.C. 889, and need not be detailed here. The Tax Court in banc, three judges dissenting, held that the amount of the cancelled indebtedness was not includible in the taxpayer's equity invested capital. We hold to the contrary.

Under the express terms of Section 718(a) (2) the cancelled indebtedness in question was required to be included in the taxpayer's equity invested capital if it was "Property (other than money) previously paid in * * * as a contribution to capital." The indebtedness clearly was property within the meaning of Section 718(a) (2) [2]. Under the Treasury Regulations in force in 1938 [3] as well as during the tax year involved [4] its gratuitous forgiveness, if it had been by a stockholder creditor, would have amounted to a contribution to the capital of the taxpayer.[5] It is also settled that one who is not a stockholder and who has no proprietary interest in a corporation may make a contribution to its capital within the meaning of Section 718(a).[6] Here the Hudson Coal Company, although not itself a stockholder of the tax-

---

1. "§ 718. Equity invested capital

   "(a) Definition. The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b):—

   "(1) Money paid in. Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

   "(2) Property paid in. Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. * * *

   * * * * *

   "(4) Earnings and profits at beginning of year. The accumulated earnings and profits as of the beginning of such taxable year; * * *." 26 U.S.C.A. § 718.

2. Walsh Holyoke Steam Boiler Works v. Commissioner of I. R., 1 Cir., 1947, 160 F.2d 185, 188.

3. Regulations 94

   "Art. 22(a)–14. Cancellation of in-debtedness.—* * * If a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation."

4. Regulations 111

   "Sec. 29.22(a)–13. * * * In general, if a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation to the extent of the principal of the debt."

   The term "contribution to capital" means the same thing under the excess profits tax provisions of the Internal Revenue Code as it does under the income tax provisions. Sec. 728, I.R.C., 26 U.S.C.A. § 728; Brown Shoe Co. v. Commissioner, 1950, 339 U.S. 583, 592, 70 S.Ct. 820, 94 L.Ed. 1081.

5. Helvering v. American Dental Co., 1943, 318 U.S. 322, 328, 63 S.Ct. 577, 87 L. Ed. 785.

6. Brown Shoe Co. v. Commissioner, 1950, 339 U.S. 583, 70 S.Ct. 820, 94 L.Ed. 1081; Commissioner of Internal Rev. v.

payer, was the majority stockholder of the taxpayer's own majority stockholder and thus a corporate grandparent, so to speak, with a proprietary interest which a contribution to capital would enhance.

■ The Tax Court nonetheless held that the cancelled indebtedness did not represent property paid in to the taxpayer since it was includible in equity invested capital under Section 718(a) (2) only "in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange" and upon cancellation ceased to exist and therefore could have no such basis in the hands of the debtor. But the Tax Court failed to give effect to Section 113(a) (8) (B) of the Internal Revenue Code which provides that such basis for gain or loss in the case of property acquired after December 31, 1920 as a contribution to capital shall be the same as it would be in the hands of the transferor.[7] The interdependence of the two provisions has been recognized by the Commissioner.[8] The basis of the indebtedness herein question in the hands of Hudson Coal Company, the creditor-transferor, was $99,965.05. It was therefore includible in the taxpayer's equity invested capital in that amount.

■ The respondent argues that the indebtedness was wholly uncollectible because of the taxpayer's insolvency and for that reason could not be regarded as property paid in to the taxpayer as a contribution to capital. It does appear that the taxpayer was insolvent prior to the cancellation of the debt but the only evidence on the point in the record is the taxpayer's income tax return for 1938 and that indicates that after the cancellation of the indebtedness of $99,965.05 the taxpayer had a net worth of $42,484.28. The Tax Court made no finding that the debt was worthless or wholly uncollectible and such a finding would clearly have been erroneous under the circumstances. For, assuming a pro rata distribution of the taxpayer's assets at their book value to the taxpayer's creditors before the cancellation of the Hudson Coal Company debt, that company and all the other creditors would have received a dividend of 84% of their claims. That the cancellation of the debt was of value to the taxpayer is obvious since it transformed an insolvency of $57,480.77 into a net worth of $42,484.28.

■ The respondent's final contention is that Section 718(a) (2) is not applicable here because Hudson Coal Company did not intend to make a contribution to the taxpayer's capital. While there are no findings by the Tax Court on the subject the facts were stipulated and it appears from them that the cancellation of the indebtedness by Hudson Coal Company was wholly gratuitous and motivated solely by its desire to aid the taxpayer in continuing in business.[9] This is sufficient evidence that the transaction was intended to be a contribution to capital.[10]

The decision of the Tax Court will be reversed.

McKay Products Corp., 3 Cir., 1949, 178 F.2d 639, overruling on this point Carlisle Tire & Rubber Co. v. Commissioner of Int. Rev., 3 Cir., 1948, 168 F.2d 816.

7. 26 U.S.C.A. § 113(a) (8) (B).

8. Regulations 112

"Sec. 35.718–1 Determination of Daily Equity Invested Capital-Money and Property Paid In. * * *

"If the property was acquired after December 31, 1920, by a corporation from a shareholder as paid-in surplus or from any person as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor if the transfer had not been made. (See section 113(a) (8).) * * * "

9. In a letter to the taxpayer dated December 29, 1938, Hudson Coal Company stated: "In view of the financial position of Crean Brothers, Incorporated, and to aid your Company in continuing in business on a reasonable basis, this is to advise that The Hudson Coal Company is cancelling the amount of this indebtedness, viz. $99,965.05."

10. United States v. Oregon-Washington R. & Nav. Co., 2 Cir., 1918, 251 F. 211, 213; Commissioner of Internal Revenue v. Auto Strop Safety Razor Co., 2 Cir., 1934, 74 F.2d 226; Carroll-McCreary Co. v. Commissioner of Internal Rev., 2 Cir., 1941, 124 F.2d 303; Chenango Textile Corp., v. Commissioner of Int. Rev., 2 Cir., 1945, 148 F.2d 296.

KALODNER, Circuit Judge (dissenting).

The crux of the majority's position is that (1) the cancelled indebtedness had a "basis" of $99,965.05 in the hands of the Hudson Coal Company within the meaning of Section 113(a) (8) (B) and (2) was "property" within the meaning of Section 718(a) (2). I disagree with that position.

First, as to the "basis": the record itself clearly establishes its non-existence. Since the majority in its opinion did not discuss what I deem to be the critical facts in the record on that score, it becomes necessary to do so here. The facts referred to are:

On December 29, 1938, the Hudson Coal Company ("Hudson") owned 51 per cent and the Foedisch Coal Company[1] ("Foedisch") owned 49 per cent of the capital stock of the Middle Atlantic Anthracite Corporation. The latter corporation in turn owned 77.3 per cent of the outstanding stock of the taxpayer. Hudson mined and produced coal. Foedisch sold coal at wholesale and the taxpayer sold coal at retail.

Shortly before December 29, 1938, Foedisch owed Hudson $303,151.15 for coal purchased and resold to the taxpayer; the latter owed $317,634.50 to Foedisch on account of its purchase of coal from it.

Orally, on December 28, 1938, and by letter on December 29, 1938, Foedisch advised Hudson that it was unable to make collections from the taxpayer, and proposed to Hudson that "an adjustment" be made of its obligation to Hudson and that of the taxpayer to it. Foedisch specifically proposed that it assign to Hudson $100,000 of the taxpayer's indebtedness to it in consideration of Hudson's cancellation of $100,000 of Foedisch's indebtedness to Hudson. Foedisch attached to the letter of December 29th an assignment of $99,965.05 of the taxpayer's indebtedness.

On December 29, 1938, Hudson wrote a letter to the taxpayer advising it of Foedisch's proposal and stated that "in view of the financial position" of the taxpayer and to "aid" it "in continuing in business on a reasonable basis", Hudson was "cancelling" the amount of its indebtedness, viz., $99,965.05.

On December 30, 1938, Hudson by letter[2] to Foedisch, accepted its proposal and acknowledged receipt of the assignment. Of the utmost significance on the question of "basis" is the statement made in this letter that "In consideration of the assignment above referred to, The Hudson Coal Company is willing *to forgive* $99,965.05 of the indebtedness of the Foedisch Coal Company to it, * * *."

Foedisch treated the transaction in the same manner in its "Journal Entry". It noted therein that Hudson "forgives" it "of invoices due Hudson totalling $99,965.05, * * *."

---

1. The name has since been changed to Pennsylvania and Hudson Company.

2. "EXHIBIT C.
The Hudson Coal Company
Office of Comptroller
230 Park Avenue, New York 17, N. Y.
Scranton 1, Pa. Office
424 Wyoming Avenue
December 30, 1938
"Mr. Richard Darlington, President,
Foedisch Coal Company,
Broad Street Station Building,
Philadelphia, Pa.
"Dear Sir:
"This will acknowledge receipt of your letter of December 29, 1938, pertaining to the indebtedness of Foedisch Coal Company to The Hudson Coal Company, and to the indebtedness of Crean Brothers, Incorporated, to Foedisch Coal Company.

"This is to advise that the arrangement proposed in your letter is satisfactory to The Hudson Coal Company and that the assignment, accompanying your letter, of Crean Brothers, Incorporated, indebtedness to extent of $99,965.05 is satisfactory.
"In consideration of the assignment above referred to, The Hudson Coal Company is willing to forgive $99,965.05 of the indebtedness of Foedisch Coal Company to it, which indebtedness is itemized on the attached statement, and this is to advise that The Hudson Coal Company is crediting your account, in December accounts, with the amount of $99,965.05.
Yours truly,
s/ W. W. Cox
Comptroller."

The record cited thus clearly establishes that Hudson did not regard or treat the assigned invoices as having any value either when they received them from Foedisch or when they cancelled them. It demonstrated this fact (1) by "forgiving", at the very outset, Foedisch $99,965.05 of its indebtedness, and (2) by charging its surplus account with the amount of the assigned invoices.[3] To say, under these circumstances, that Hudson had ever accorded any "basis" to the taxpayer's invoices when they were received from Foedisch is manifestly unrealistic.

Vital to the problem also, is the treatment which the taxpayer itself accorded to the cancellation transaction.

It treated, on its books, the $99,965.05 cancellation as a reduction in its accounts payable—reducing the prior outstanding total of that item from $312,200.74 to $212,235.69. At the same time it credited the cancellation to its surplus account—reducing the prior deficit in the latter from $257,480.77 to $157,515.72.

It is crystal clear from the above that in December, 1938, Hudson did not regard or intend the cancellation as a "contribution to capital" of the taxpayer because had it done so it would have maintained it on its books as an asset instead of reducing its total asset position as it did.

Similarly, the taxpayer did not treat the cancelled amount as a "loan" or "contribution to capital", because had it done so, it would have listed it as such instead of applying it in reduction of its accounts payable with an equivalent reduction of the deficit in its surplus account.

The indisputable insolvency of the taxpayer immediately prior to the time these transactions took place is fully explanatory of both the forgiveness of Foedisch's debt and the cancellation to the taxpayer. The record discloses that immediately prior to the transactions above recited the taxpayer's financial position was as follows:

Its liabilities exceeded its assets by $257,480.77; its accounts payable of $312,200.74 alone exceeded by $8,577.65 its total assets.[4] In that connection it may be noted that included in assets was an item of $48,331.71 "Good Will" which would, of course, in the event of liquidation have been without value, so that in reality the accounts payable exceeded by $56,909.36 the $255,291.38 book value of the actual assets.

In addition to the accounts payable of $312,200.74, the taxpayer owed $44,000 to other creditors, $2,083.55 taxes and $2,819.57 salaries, etc., making a total indebtedness of $361,103.86, exclusive of its $200,000 capital stock liability.[5]

It is, of course, true that after the cancellation took place the prior existing insolvency was wiped out, but it is equally true that there remained capital impairment of $157,515.72. As stated by the Tax Court, the cancellation did not create any surplus. I subscribe to the Tax Court's view that "* * * the cancellation of indebtedness cannot increase the equity invested capital of a debtor corporation under section 718 (a) (2), even assuming that it represents a contribution to capital, since the property paid in or contributed is includible in equity invested capital under section 718(a) (2) only 'in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange.'" I subscribe also to the Tax Court's ruling that "A debt, when cancelled, ceases to exist and the former debtor is not

3. Hudson, in its "Journal Entry" charged $99,965.05 to its surplus account and reduced its accounts receivable by the same amount, stating therein that "The financial position of Crean Brothers, Inc. indicates that the collection of this account is unlikely."

4. Liabilities were $561,103.86; assets were $303,623.09.

5. The majority stated at one point in its opinion that "assuming a pro rata distribution of the taxpayer's assets at their book value to the taxpayer's creditors before the cancellation of the Hudson Coal Company debt, that company and all the other creditors would have received a dividend of 84% of their claims." The 84 per cent calculation is incorrect. Deducting the $48,331.71 "Good Will", the taxpayer's net assets were $255,291.38. Assuming they would have yielded in liquidation their book value, the creditors would have received a dividend of less than 71 per cent.

in receipt of any property which can have a basis in his hands for gain or loss regardless of how the cancellation came about or of the basis the debt had in the hands of the creditor."

Finally, in my opinion, LaBelle Iron Works v. United States, 1921, 256 U.S. 377, 41 S.Ct. 528, 65 L.Ed. 998 [6] is completely dispositive of the issue presented by this appeal. In that case the Court, in discussing the words "invested capital" as used in the excess profits tax section, stated in 256 U.S. at page 386, 41 S.Ct. at page 530: "The word 'invested' in itself imports a restrictive qualification. When speaking of the capital of a business corporation or partnership, such as the act deals with, 'to invest' imports a laying out of money, or money's worth, either by an individual in acquiring an interest in the concern with a view to obtaining income or profit from the conduct of its business, or by the concern itself in acquiring something of permanent use in the business; *in either case involving a conversion of wealth from one form into another suitable for employment in the making of the hoped-for gains.* * * *" (emphasis supplied.)

Applying that statement to the problem presented here I find there was no "conversion of wealth from one form into another" in the cancellation of an indebtedness of an insolvent concern so as to constitute "invested capital" within the meaning of the excess profits tax section as required in the ruling cited.

Further, there was no intention on the part of Hudson to make the amount of the cancelled indebtedness an addition to capital of the taxpayer and such intention was indicated to be essential by the Supreme Court in Brown Shoe Co. v. Commissioner, 1950, 339 U.S. 583, 593, footnote 17, 70 S.Ct. 820, 94 L.Ed. 1081.

Applicable to the question here presented is the ruling in Marshall Drug Co. v. United States, 1951, 118 Ct.Cl. 532, 95 F.Supp. 820, certiorari denied 1951, 341 U.S. 948, 71 S.Ct. 1015, 95 L.Ed. 1372. In that case trade creditors cancelled approximately $26,000.00 of the taxpayer's merchandise indebtedness to them. Said the Court, at pages 821–822 of 95 F.Supp.: "Plaintiff's (taxpayer's) creditors were in business. When confronted with this situation * * * some cancelled part or all of their claims. These latter thought that full collection could not be made or, for one reason or another, was not worth while to seek. Some of them were motivated by the prospect of continued business with the reinvigorated Marshall Drug Co. (taxpayer) * * * These were business dealings. Each cancellation was the result of a creditor's individual business judgment. It was not a gift. The result to plaintiff was an increase in its net worth. *The cancellations clearly constituted income."* (emphasis supplied)

Particularly relevant too, to the issue here, is the ruling in Pacific Magnesium, Inc., v. Westover, D.C.S.D.Cal.1949, 86 F.Supp. 644, where it was held that the gain to the taxpayer resulting from the release of its debt was not a contribution to taxpayer's capital under the excess profits tax section. The District Court gave particular consideration to the conduct of the parties at the time the transaction took place. In that connection the Court stated, at pages 649–650 of 86 F.Supp.: "In all cases of this character, the contemporaneous acts of the parties performed at the time when the effect of the transaction *on tax liability* was not uppermost in their minds should prevail over *subsequent attempts to give to it a* different interpretation." The Ninth Circuit affirmed in 1950, 183 F.2d 584 and held that the issue as to whether *a capital contribution* resulted from the transaction there or was income as held by the District Court, was "a purely factual one", citing Commissioner of Internal Revenue v. Jacobson, 1949, 336 U.S. 28, 51, 69 S.Ct. 358, 93 L.Ed. 477.

The rule is well settled that the fact finding of the Tax Court will not be reversed on appeal unless "clearly erroneous". We so held in Commissioner of Internal Revenue v. Penn Athletic Club Bldg., 3 Cir.,

---

6. The LaBelle case is still the applicable law as was pointed out in Brown Shoe Company v. Commissioner, 1950, 339 U. S. 583, 592, 593, 70 S.Ct. 820, 94 L.Ed. 1081.

1949, 176 F.2d 939, 943; Blum v. Commissioner, 3 Cir., 1950, 183 F.2d 281, 287.

It is just as well settled that the Commissioner's determination is presumptively correct and that the taxpayer has the burden of establishing claimed increase in its invested capital. Walsh Holyoke Steam Boiler Works, Inc. v. Commissioner of Internal Revenue, 1 Cir., 1947, 160 F.2d 185, 188.

It is for the reasons stated that I would affirm.