RELIABLE INCUBATOR AND BROODER COMPANY, AN ILLINOIS CORPORA-
TION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT.

Docket No. 6722. Promulgated April 30, 1946.

920

*Robert S. Hunter, Esq.*, for the petitioner.
*David F. Long, Esq.*, for the respondent.

922

OPINION.

KERN, *Judge*: Five separate questions are presented here for decision. We shall consider each of them separately.

## I.

The first question is whether petitioner is entitled to deductions for each of the three fiscal years ended June 30, 1941, 1942, and 1943, respectively, for the payments made to Mrs. Myers, to the extent that such payments included interest, as computed on an actuarial basis.

Petitioner concedes that the entire amounts paid to Mrs. Myers in these taxable years are not deductible as interest, but contends that it is entitled to deduct as interest such portions of these payments as represent interest computed on an actuarial basis.[3]

---

[3] The petitioner has not offered any detailed evidence as to its method of computing the amounts which it now claims deductible as "interest." However, petitioner has set forth its computations in its petition and brief, which for the purpose of clarity in this opinion we here reproduce, without, however, finding in any way as to the accuracy of petitioner's analysis:

Computed in accordance with Table A, of Regulations 80, the value of an annuity of $30.00 per week, for a person aged 47 years, the age of Lillian Myers in November, 1939, computed on the basis of 4%, would be $20,474.47 calculated as follows:

$1,560.00 x 13.31698 is_____ $20,774.49
Less ⅛ year to bring value down to March 1, 1940_____    300.02
                                                                ——————
                                                                20,474.47

| | Annuity balance | Age | Life expectancy (years) | Period | Principal | Interest |
|---|---|---|---|---|---|---|
| Mar. 1, 1940 | $20,474.47 | 47 | 23.08 | 6/30/40 | $295.70 | $214.30 |
| June 30, 1940 | 20,178.77 | 48 | 22.36 | 6/30/41 | 902.45 | 687.55 |
| June 30, 1941 | 19,276.32 | 49 | 21.63 | 6/30/42 | 891.16 | 668.84 |
| June 30, 1942 | 18,385.16 | 50 | 20.91 | 6/30/43 | 879.25 | 680.75 |
| June 30, 1943 | 17,505.91 | 51 | 20.20 | | | |

Petitioner's present contention is that it should be permitted to deduct as interest the amounts shown under the heading "interest" in the above computation.

Section 23 (b) of the Internal Revenue Code provides, in so far as here material, that all interest paid or accrued within the taxable year on *indebtedness* shall be allowed as a deduction in computing net income.

The liability of the petitioner to make these payments was not "indebtedness" within the meaning of section 23 (b), and no part of the payments is deductible as "interest" under the statute. The "indebtedness" of the petitioner was paid by its creditor's acceptance of its contractual obligation to make small weekly payments during the creditor's life. Until and unless these payments were in arrears there was thereafter no "indebtedness" of petitioner upon which interest could be paid and, therefore, no interest is deductible under the statute. *Irene W. Johnson*, 39 B. T. A. 702, 710; affd., 108 Fed. (2d) 104.

Petitioner relies on *Florence L. Klein*, 6 B. T. A. 617, and *Commissioner* v. *Moore Corporation*, 42 Fed. (2d) 186, affirming 15 B. T. A. 1140. *Florence L. Klein* is clearly distinguishable from the instant case for the reason set forth in *Edwin M. Klein*, 31 B. T. A. 910, 919. In the *Moore* case the question at issue was the cost of the property received by the annuity writer from the annuitant, and not the deductibility of interest under section 23 (b).

## II.

The second question for decision is whether the cancellation by Clarence Myers of $600 of the indebtedness owed him by the petitioner resulted in taxable income to the petitioner in the year ended June 30, 1941.

Petitioner contends that the cancellation of $600 of the indebtedness by Clarence Myers was a gift and not taxable as income. In support of this contention petitioner relies exclusively on *Helvering* v. *American Dental Co.*, 318 U. S. 322. The decision in that case is not applicable to the case before us, inasmuch as the forgiveness of $600 of the debt by Clarence Myers was not gratuitous.

On the basis of the evidence offered by the parties we have found that petitioner was obligated to make payments on the indebtedness to Myers only at the rate of $50 per month. When petitioner made the payments of $100 and $500 in August 1940, it, in so far as we are able to determine, made payments on its obligations before they were due. Therefore, there was consideration for the forgiveness of part of the debt. If a debtor pays his debt or a part of it before it is due, the consideration is sufficient to support a promise by the creditor. *Crowe* v. *Gore*, 85 Fed. (2d) 291, 294. See also Williston on Contracts, Rev. Ed. 1936, vol. 1, sec. 121, and authorities there cited; Restatement of the Law of Contracts, sec. 76, illustration 6; and the annotation at 24 A. L. R. 1474.

There is no evidence in the record showing that petitioner was insol-

vent in August 1940, or was in an "unsound financial condition"; and it did not file the consent required by section 22 (b) (9) of the Internal Revenue Code and section 19.22 (b) (9)–2 of Regulations 103.

Petitioner accordingly realized income in the amount of $600 as a result of this cancellation of indebtedness within the meaning of section 22 (a) of the Internal Revenue Code and section 19.22 (a)–14 of Regulations 103.[4]

### III.

The third question is whether respondent erred in applying the excessive depreciation allowed in years prior to the taxable years on a part of petitioner's machinery acquired before 1921 to the depreciation reserve of other machinery acquired by petitioner after 1920, but before the taxable years and grouped by petitioner in the same class of depreciable assets, to wit: "Machinery and equipment", to which a composite rate of depreciation was applied, thereby reducing the amount of depreciation accruable in each of the tax years here involved on the machinery acquired after 1921.

It shoul.1 be pointed out that the evidence presented on this issue by petitioner, who had the burden of proof, is extremely unsatisfactory. We have based our findings of fact upon the evidence presented by the entire record and the presumptions raised by the respondent's determination where those presumptions have not been overcome by the evidence.

Petitioner relies exclusively on *Pittsburgh Brewing Co.*, 37 B. T. A. 439; reversed on another point, 107 Fed. (2d) 155. It is our opinion that the *Pittsburgh Brewing Co.* case is not controlling here and that we must hold for the respondent on the basis of *Hoboken Land & Improvement Co.* v. *Commissioner*, 46 B. T. A. 495; affd., 138 Fed. (2d) 104.

The *Pittsburgh Brewing Co.* case, *supra*, is distinguishable on its facts from the instant case for much the same reasons as we set forth in *Hoboken Land & Improvement Co.*, *supra*, at page 500. The taxpayer in the *Pittsburgh Brewing Co.* case maintained separate depreciation accounts for the buildings, brewing machinery, engine room machinery, refrigerator machinery, stationary cooperage, furniture

---

[4] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross Income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service of whatever kind and in whatever form paid, or from professions, vocations, trades, business, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property ; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

SEC. 19.22 (a)–14 [Regulations 103]. *Cancellation of indebtedness.—(a) In general.—* The cancellation of indebtedness, in whole or in part, may result in the realization of income. * * * A taxpayer realizes income by the payment or purchase of his obligations at less than their face value. * * *

For exclusion from gross income of income attributable to discharge of indebtedness of a corporation in an unsound financial condition, see section 19.22 (b) (9)–1.

and fixtures, and cooper shop machinery belonging to each of its several breweries; no composite depreciation method was ever used either on its books or on its income tax returns. In essence the Pittsburgh Brewing Co. maintained separate depreciation accounts for groups of assets, the assets in each group being similar in kind.[5] This Court pointed out in its opinion in that case that "there was no composite depreciation used" and held that "in a method of depreciating specific groups of assets there is no justification for applying the excessive amount computed as to one asset or group so as to reduce the basis of another." (*Pittsburgh Brewing Co.*, *supra*, at p. 445.)

In the *Hoboken Land & Improvement Co.* case, *supra*, the taxpayer was allowed excessive depreciation on a class of its property described as "piers and waterfront properties". We held that excessive depreciation allowed on assets in this account could be allocated against the unexhausted basis of other assets acquired and placed in the account after the accumulation of the excess. In sustaining our holding, the Circuit Court of Appeals for the Third Circuit stated, "Nor is *Pittsburgh Brewing Company* v. *Commissioner* * * * helpful since it involved an attempt to apply excessive depreciation, taken at a certain rate on one group of assets, to another, depreciated at a different rate. Here, of course, there was only one class of depreciable assets." *Hoboken Land & Improvement Co.* v. *Commissioner*, *supra*, 138 Fed. (2d) 104, 108.

The petitioner in the instant case has used a modification of composite accounting in that it placed all of its depreciable assets into three general property accounts or classes, namely, buildings, office devices, and machinery.[6] We see no real distinction between the problem involved in the *Hoboken* case and the problem here before us.

Therefore, we hold that the excessive depreciation taken by petitioner on machinery acquired by it prior to 1921 was properly added by respondent in the taxable years to the depreciation reserve applicable to machinery acquired by petitioner after 1920 and prior to the taxable years which was grouped by petitioner for depreciation purposes in the same class of depreciable property, and upon which class depreciation was calculated at a composite percentage.

## IV.

The fourth question is whether petitioner is entitled to charge off in its tax return for the fiscal year ended June 30, 1942, the full amount of its expenditures in connection with a patent application which was

---

[5] Under Bulletin "F" (Revised January 1942) of the Bureau of Internal Revenue, these would be designated as "group accounts," had the bulletin as revised been in effect at the period involved in the *Pittsburgh Brewing Co.* case. See U. S. Treasury Department—Bureau of Internal Revenue, Bulletin "F" (Revised January 1942)—Income Tax, Depreciation and Obsolescence—Estimated Useful Lives and Depreciation Rates, at p. 6.

[6] Such accounts are designated as "classified accounts" in Bulletin "F," *supra*.

denied in that year, even though petitioner had deducted the full amount of these expenditures as expenses in its tax returns for years prior to the year ended June 30, 1939.

Petitioner has not come here offering to correct its tax returns for the years in which it erroneously deducted as expenses its expenditures in connection with the patent application. Furthermore, from the evidence before us it would appear that the respondent would be barred by the statute of limitations from assessing any deficiencies for those years. It is apparent that the petitioner is not asking us to determine its true tax liabilities for those years, but rather is requesting that we allow for a second time a deduction from gross income which it has already enjoyed.

In *Firemen's Insurance Co.*, 30 B. T. A. 1004, this Court held that where the period of limitations has run against any adjustment, a taxpayer may not receive a deduction for depreciation on any property the full cost of which was deducted from income as an operating expense in the year paid or incurred and allowed as such. Although the question under immediate consideration does not involve an allowance for depreciation, the principle enunciated in that case is clearly applicable and, we think, decisive of the point. See also *Mrs. R. L. Wheelock*, 28 B. T. A. 611; affd., 77 Fed. (2d) 474, in which it is said at page 617:

> Petitioners do not come here offering to correct their return for 1924 on the basis of the true income for that year and, even if they were willing so to do, such action is now barred by the statute of limitations as well as the closing agreement. It is apparent therefore, that in the present proceeding they are not asking us to redetermine their true tax liability for each of the years 1923 and 1924, but for the second time to allow them an offset against their taxes which they have already enjoyed. Unless the law inescapably permits such an inequitable result, they should not prevail.

We believe that respondent's disallowance of the deduction here in question is justified by the same equitable principle. Petitioner has obtained the benefit of the deduction of the entire cost of the patent application in prior years. Even though this deduction might have been disallowed by the respondent for those prior years as erroneously taken, it was not questioned, and, so far as the record discloses, it can not now be questioned, and petitioner makes no offer that its tax returns for those prior years be adjusted to rectify its own error by which it has benefited. To hold in favor of petitioner would be to allow it a double deduction for the same expenditures. "A construction of a taxing statute permitting a duplication of deductions is not favored by the courts." *Keystone Automobile Club Casualty Co.*, 40 B. T. A. 291, 308. See also *Ilfeld Co. v. Hernandez*, 292 U. S. 62; *Comar Oil Co. v. Helvering*, 107 Fed. (2d) 709; and *Bank of Newberry*, 1 T. C. 374, 376.

## V.

The final question is whether petitioner is entitled to take deductions in the tax years here involved on a typewriter acquired by it in the fiscal year ended June 30, 1939, the entire cost of which was deducted as an expense in petitioner's income tax return for that year.

Inasmuch as petitioner has not discussed this point in its brief, we can assume that it has abandoned its contention that the respondent erred in disallowing the deductions for depreciation. However, we might point out that even if petitioner had pursued this point, it could not prevail for the same reasons as are set forth immediately above in regard to the petitioner's expenditures for the patent application.

*Decision will be entered for the respondent.*