OPINION. Harlan, Judge: It has consistently been held that expenses incurred in the experimentation and development of patents, formulas, and processes are capital expenditures; Claude Neon Lights, Inc., 35 B. T. A. 424; Hazeltine Corporation, 32 B. T. A. 110; Forest Products Chemical Co., 27 B. T. A. 638; Goodell-Pratt Co., 3 B. T. A. 30; Gilliam Mfg. Co., 1 B. T. A. 967; see Reliable Incubator & Brooder Co., 6 T. C. 919, 929; John F. Canning, 29 B. T. A. 99, 107; Ward v. United States, 32 Fed. Supp. 743, 746 (Dist. Ct. Mass. 1940). Here, however, petitioner maintains that the expenditure of $7,942.04 by the Midwest Research Institute during the taxable year did not develop anything of commercial value for petitioner and was not even directed to a particular patent, formula, or process which afforded a reasonable expectation of commercial success. It contends that this money was expended on an exploratory line of research that was subsequently abandoned and that it should accordingly be deductible as a business expense. As noted in our findings, the agreement between petitioner and Midwest Research Institute provided that the Institute was to “carry on research and development work for the Sponsor [petitioner] relating to chemicals, excepting enzymes and antibiotics, derivable from grain by fermentation processes for a period of two years, beginning October 23, 1945.” Petitioner was “to appropriate a total sum not to exceed $20,000 on this project.” “Any and all patentable inventions, applications for patents and patents thereon, relating to the subject matter of the project” and resulting from the project were to become the property of petitioner, and the institute was not to disclose to any third party without petitioner’s consent any “new process, device, machine, or composition of matter” growing out of the project. It is obvious from a reading of these provisions that it was at least within the contemplation of petitioner’s officers that research in regard to chemicals derivable from grain might develop something of permanent value to petitioner. It is not determinative of the issue here that nothing of a capital nature was developed during the taxable year in question or that the particular line of research which the institute was following during that year subsequently proved fruitless. It is clearly the very nature of an experimental project that many lines of approach must be tried and many abandoned before results are obtained. Manifestly, the initial unsuccessful experiments, as well as the final successful ones, would have entered into the cost of any capital asset that had been developed. There was no occasion for saying at the close of the taxable year that no capital asset would be developed and for isolating the portion of the project sum expended by the institute up until that time and deducting it as a business expense of petitioner. Clearly, the project sum, which had been paid in toto by petitioner to the Midwest Research Institute shortly after the contract was executed, should be treated as a unit, like the project. As of the end of the taxable year on April 30, 1946, only slightly more than one-third of that project sum had been expended and only slightly more than one-fourth of the project time had elapsed. Only when the complete project had resulted in failure and there had been a definite abandonment or termination could the expenditures have been deducted, and then as a loss. Acme Products Co., 24 B. T. A. 194; H. B. Perine, 22 B. T. A. 201. As the Board said in Acme Products Co., supra (p. 196): It is claimed that * * * the items in controversy * * * are deductible * * * as expenditures made in an unsuccessful effort to develop a secret formula and a patentable process. Such expenditures, if made as contended, would be of a capital nature and would not be deductible as ordinary and necessary expenses. While additional work was being done in an effort to succeed and while hope for ultimate success was not unreasonable, there was no occasion to deduct any part of the expenditures as a loss. The cases cited by petitioner are clearly distinguishable from the case at bar. In Duesenberg, Inc. of Delaware v. Commissioner, 84 Fed. (2d) 921 (C. C. A., 7th Cir., 1936), the taxpayer was not allowed to capitalize certain development and experimental costs which it had already deducted as business expenses in prior years with the approval of the Commissioner. No such question is involved here. In Homer L. Strong, 14 B. T. A. 902, the taxpayer was allowed to deduct sums expended by him in a futile effort to make marketable an already patented machine. There was no indication that the experimentation was to extend beyond the taxable year, as here. In Dresser Manufacturing Co., 40 B. T. A. 341, the syllabus of the opinion reads: During the years 1931, 1932, and 1933, taxpayer made expenditures, which it capitaized, for the purpose of developing a gas compressor engine known as “Engine No. 1.” In 1933 it abandoned its efforts to develop and perfect “Engine No. 1.” * * * Held, petitioner is entitled to deduct as a loss sustained in 1933 the amount of the capital expenditures made in connection with “Engine No. 1» * * *. In a former proceeding of the Dresser Manufacturing Co., before the Board of Tax Appeals the taxpayer had sought to reduce its taxable income for 1932 by the amount of its experimental expenditures made in 1932. The opinion of the Board in the earlier case was quoted in the opinion of the Board set forth in 40 B. T. A. 341, supra, and in that quotation the Board is reported to have decided that the expenditures of 1932 should be capitalized during 1932, inasmuch as the experimental project had not been abandoned in 1932 and was not abandoned until the following year. In the case at bar we have a very similar situation. At the end of the taxable year, April 30,1946, petitioner herein was still promoting its research. It had no means of knowing whether the money expended prior to April 30,1946, would develop into a valuable asset or not. The fact that it continued such expenditures until November 1946 would indicate that at the close of the fiscal year now before the Court it had reasonable hope of success. Therefore at the end of the fiscal year 1946 it could only consider its development expenditures as capital investments. The manner in which such expenditures should be handled for tax purposes during the year in which the experiments were finally abandoned is not now before us. We accordingly hold that the amount of $20,000 paid by the petitioner to Midwest Research Institute to carry on research and development work as per contract was a capital expenditure, as determined by respondent, and that no part of that amount can be deducted from petitioner’s income for the taxable year ended April 30,1946. The second question is whether sums borrowed by petitioner which it used tó purchase United States obligations during war loan drives constitute borrowed invested capital under section 719 of the Internal Revenue Code.[1] Respondent maintains that these sums do not come within the intent of the statute. He cites Regulations 112, section 35.719-1,[2] and contends that the indebtedness here in question was not incurred for business reasons as required by this regulation. Petitioner’s position is that the statute is categorical and that under the statute, as a corporation computing its excess profits tax credit on the basis of invested capital, it was entitled to include in its invested capital one-half of all its indebtedness evidenced by notes, regardless of the reason for which the indebtedness was incurred. Petitioner contends that the regulation cited by respondent is not valid, being a delimitation of the clear words of the statute. We may state at this juncture that, in our opinion, the cited portion of Regulations 112, sec. 35.719-1 is valid. It is entirely in accord with the spirit of the excess profits tax legislation. As this Court said in West Construction Co., 7 T. C. 974 (at 978): * * * Underlying the whole plan of the statute is the assumption that Invested capital may consist * * * of borrowed capital as well. Internal Revenue Code, secs. 717-719. But it is equally reasonable to infer that what was intended was an investment as to which the business in question assumes some risk. We must never lose sight of the fundamental purpose of the legislation, which was to establish a measure by which the amount of profits which were “excess” could be judged. Thus capital funds placed at the risk of the business might be regarded as entitled to an adequate return * * *. In Player Realty Co., 9 T. C. 215, this Court said: We are therefore of the opinion that by the use of outstanding indebtedness the statute contemplates the inclusion in invested capital of outstanding indebtedness, in the form required, for capital borrowed and invested in the business of the taxpayer * * * [Italics supplied.] The cited regulation is not in conflict with the statutory intent, nor is it a delimitation of the meaning of the statute, as contended by petitioner. It merely expresses the well settled rule that transactions must have a business purpose and not be mere formal devices, to be effective taxwise. Higgins v. Smith, 308 U. S. 473 (1940); Gregory v. Helvering, 293 U. S. 465 (1935). It is not questioned that the borrowings in question were evidenced by notes, nor that they constituted indebtedness of petitioner. They therefore meet the bald requirements of the statute. The question then is simply whether or not these sums qualify as borrowed invested capital within the intent of the statute and under the disputed regulation. Petitioner maintains that, even if it concedes for the sake of argument the validity of the regulation, the sums here in question qualify under it as borrowed invested capital. Petitioner does not contend that the transactions whereby it bought securities with borrowed funds were entered into by it for the sake of any profit to be derived in the form of interest on the securities, since in almost all cases it paid out the same rate of interest on the notes evidencing the borrowings as it received on the securities. On the contrary, it merely contends that by participating in war loan drives in the communities where it had grain elevators it obtained local good will essential to its business, and that therefore the sums here in question were borrowed for business reasons, as required by the regulation, and thus qualify as borrowed invested capital. However, whatever the fears of petitioner’s officers, they certainly did not suppose that it was incumbent on any business to subscribe for Government obligations to an extent where it had to borrow millions in order to finance the subscriptions, as petitioner did here. And it is worthy of notice that petitioner sold all the securities and retired the notes which they secured after the close of the fiscal year, April 30,1946, when the excess profits tax (terminated by the Revenue Act of 1945, effective as to taxable years beginning after December 31,1945) was no longer in effect and the tax benefits of a large amount of borrowed invested capital could no longer be obtained. Also, it is not amiss to inquire why any good will which petitioner might' have obtained by the gesture of the purchases was not lost when it unloaded the securities the following year. The facts clearly do not support a view that the borrowings were a proper “measure by which the amount of profits which were excess could be judged,” in the phrase of West Construction Co., supra. It is therefore our conclusion that the sums here in question wére not borrowed for business reasons and they were not subject to business risks. We hold that they may not be included in petitioner’s borrowed invested capital under section 719 of the Internal Revenue Code. Reviewed by the Court. Decision will be entered wnder Bule 50. SEC. 719. BORROWED INVESTED CAPITAL. (a) Borrowed Capital. — The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following: (1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, * » * • **•**• (b) Borrowed Invested Capital. — The borrowed invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be an amount equal to SO per centum of the borrowed capital for such day. Sec. 35.719-1. Borrowed Invested Capital.— * * • In order for any indebtedness to be included in borrowed capital it must be bona fide. It must be one incurred for business reasons and not merely to increase the excess profits credit.