SPEAR BOX CO. INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17960. Promulgated August 23, 1949.

*Meyer Bernstein*, *Esq.*, and *Joseph B. Kass*, *C. P. A.*, for the petitioner.

*J. Richard Riggles, Jr., Esq.*, for the respondent.

248

250

OPINION.

VAN FOSSAN, *Judge*: The petitioner contends primarily that the Gair Co. voluntarily and gratuitously relinquished a part of the indebtedness due to it from the petitioner and that such relinquishment constituted a gift. It relies on the principle of "forgiveness" approved in *American Dental Co.* v. *Helvering*, 318 U. S. 322, and discussed in *Commissioner* v. *Jacobson*, 336 U. S. 28 (Jan. 17, 1949).

Petitioner argues that all of the circumstances of record, including the personal and business relationship existing between it and its officers and the Gair Co. and its officers and also the statements of such officers, indicate that the discount, or the difference between the par value of the petitioner's bonds and the amount paid by it for the acquisition of the Gair Co. notes, constituted a gift, "solicited by the petitioner from its creditor on the one hand, and freely and voluntarily donated, without prior obligation to do so, by the creditor to the petitioner, on the other hand."

We do not so read or so construe the record. Conescu and Pierce agreed that the transactions in question benefited the petitioner, but Pierce was careful to state and to repeat that *both* the Gair Co. and the petitioner would be benefited by it. The situation spells out ample consideration for the exchange and negates the concept of a gift. The trade was an ordinary business transaction, contributing to the financial welfare of each participant.

The petitioner stresses the promise of the Gair Co. to "stay out of the market" in order to enable the petitioner to purchase the required amount of Gair notes. We see therein no special advantage to the petitioner except perhaps a slight reduction in the market price, nor do we discern any detriment to the Gair Co. If that company had competed with the petitioner and forced the market price of the notes upward, it would have been compelled to pay more for its own securities owned by strangers.

Thus, we find no intent on the part of the Gair Co. to donate to the petitioner any part of its bonds and nothing in Gair's conduct that would impute such intent. Gair considered, desired, and accomplished "an even trade" by means of making the exchange of obligations. The rule in the *American Dental Co.* case, based on the receipt of a gratuitous financial advantage, does not apply to the case at bar, nor do the converse conclusions in the *Jacobson* case afford, by implication, any support for the petitioner. There is no evidence that the petitioner was insolvent at any time during its existence; consequently,

there is no need to discuss that phase of the situation. *Commissioner v. Jacobson, supra; Reliable Incubator & Brooder Co.,* 6 T. C. 919. Cf. *Astoria Marine Construction Co.,* 12 T. C.798.

The evidence submitted by the petitioner contains bookkeeping records that might tend to indicate a gratuitous transfer. However, the petitioner disclaims any reliance on any such entries and agrees with the respondent that the decision must rest on the "realities and actualities of the dealing and transactions." That is precisely the basis on which we have arrived at our conclusion.

The petitioner contends further that the acquisition of its own debenture bonds resulted in no taxable gain, even though it might have given rise to income. It argues that, since the debenture bonds, of the face value of $50,000, were issued by the petitioner to the Gair Co. for valueless good will and other debenture bonds were issued to the same company for capital assets which had been arbitrarily written up in value on the petitioner's books, the "discount" on the bonds acquired from the Gair Co. was properly recorded in the petitioner's books to reduce the good will account, pursuant to section 22 (b) (9) of the Internal Revenue Code [1] and the appropriate regulation, Regulations 111, section 29.22 (b) (9)–1,[2] and that hence the petitioner received no gain and was not subject to a tax thereon.

The petitioner argues that it filed with its return, Form 982, headed, "Consent  *  *  *  to Adjustment of Basis, etc.," in substantial compliance with the provisions of section 22 (b) (9). There is no merit in this argument. Petitioner did file a document similar to the form prescribed, but it specifically stated that it did *not* consent to such adjustment. It added to the form the words, "Taxpayer requests that the above exclusions be treated as a credit to the good will account."

---

[1] SEC. 22. GROSS INCOME.

    *          *          *          *          *          *          *

(b) EXCLUSIONS FROM GROSS INCOME.—

    *          *          *          *          *          *          *

(9) INCOME FROM DISCHARGE OF INDEBTEDNESS.—In the case of a corporation, the amount of any income attributable to the discharge, within the taxable year, of any indebtedness of the taxpayer or for which the taxpayer is liable evidenced by a security (as hereinafter in this paragraph defined) if the taxpayer makes and files at the time of filing the return, in such manner as the Commissioner, with the approval of the Secretary, by regulations prescribes, its consent to the regulations prescribed under section 113 (b) (3) then in effect.

[2] SEC. 29.22 (b) (9)–1. INCOME FROM DISCHARGE OF INDEBTEDNESS.—

Section 22 (b) (9) provides, with respect to taxable years beginning after December 31, 1941, and before January 1, 1946, a method whereby a corporation may elect to have excluded from its gross income the amount of income attributable to a discharge, within the taxable year, of its indebtedness or of indebtedness for which it is liable as, for example, in the case of a debt arising from an assumption of liability of another corporation. To be entitled to the benefits of the provisions of section 22 (b) (9) for such years a corporation must file with its return for the taxable year a consent to the provisions of the regulations, in effect at the time of the filing of the return, prescribed under section 113 (b) (3) (see sections 29.113 (b) (3)–1 and 29.113 (b) (3)–2, relating to adjustment of basis).

A taxpayer can not make a direct denial and disclaimer of consent and at the same time receive the benefit of the statute predicated on that consent. The petitioner has failed to meet the requirements of the statute and, therefore, can not exclude from its income the $46,885 in question. Its appended "request" has no significance in the absence of its affirmative consent.

Furthermore, the value and security of the debenture bonds of the petitioner rested on all of its assets. No definite part thereof can be ascribed or allotted to "good will" or to any other specific asset at whatever value it was placed on the petitioner's books. The broad principles established in the familiar case of *Kirby Lumber Co.*, 284 U. S. 1, holding that where a corporation purchased its own bonds at a price less than its issuing price, there being no shrinkage of assets, the difference constituted taxable gain, apply to the facts in the situation before us. Therefore, we hold that the petitioner received a taxable gain of $46,885 on the transactions at issue.

*Decision will be entered for the respondent.*