San Marcos Hotel Company v. Commissioner.
San Marcos Hotel Co. v. Commissioner
Docket No. 25618.
United States Tax Court
1952 Tax Ct. Memo LEXIS 253; 11 T.C.M. (CCH) 388; T.C.M. (RIA) 52108; April 18, 1952
William D. Morrison, Esq., 840 San Diego Trust & Savings Bldg.,san Diego, Calif., for the petitioner. H. A. Melville, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined a deficiency of $25,669.05 in excess profits tax for the calendar year 1944. The issues are: (1) whether respondent erred in decreasing petitioner's equity invested capital from $375,000 to $75,000 to compute its excess profits credit for the calendar years 1942, 1943 and 1944; (2) whether respondent erred in determining that the forgiveness by the mortgagee of indebtedness of $4,852.51 represented taxable income to the petitioner in 1944; and (3) whether respondent erred in refusing to allow as a deductible *254 expense for the year 1944, the amount of $11,588.03 which was paid during the year 1949. Findings of Fact Most of the facts are stipulated, and all stipulated facts are included in the findings of fact by this reference. Petitioner is an Arizona corporation with its principal office in Chandler, Arizona. Its returns for the period involved were filed with the collector of internal revenue for the district of Arizona. In its income tax returns for 1944 petitioner reported income of $62,540.30 and income tax liability of $25,016.12. No excess profits tax liability was reported. In addition to the deficiency in excess profit tax, there was an overassessment in income tax of $11,709.74. Issue No. 1 Findings of Fact Petitioner's original operating assets, valued at $199,109.78, were acquired from its parent, the Chandler Improvement Co., herein referred to as the parent, in 1914 by the issuance of all of petitioner's authorized capital stock at par value of $300,000. From that date on until 1933, petitioner was operated as a wholly-owned subsidiary of the parent. During the course of the operations of the two corporations, petitioner became heavily indebted to Pacific *255 Mutual Life Insurance Co., herein referred to as Pacific, and in turn the parent became heavily indebted to petitioner. The obligations of petitioner to Pacific were endorsed by the parent, and in 1933 Pacific requested that petitioner's assets be transferred to the parent and that a new note be issued to it which would be a direct obligation of the parent. Pursuant to such request, the board of directors of both parent and subsidiary-petitioner held meetings and adopted resolutions wherein it was agreed that the parent would take over all the assets and assume all the obligations of the subsidiary-petitioner, and would issue to Pacific its note in the amount of $950,000. The resolutions were adopted in December, 1933, and on December 20, 1933, a warranty deed to effect the transfer of the properties of petitioner to its parent was prepared and the note of $950,000 was delivered to Pacific. On that date, December 20, 1933, the parent took possession of petitioner's assets and from December 20, 1933, to May 1, 1937, received all the income and paid all the expenses in connection with the properties theretofore owned by petitioner. The deed effecting the transfer of the properties *256 was recorded in 1934. At the time of the transaction, petitioner's balance sheet appeared as follows: CONDENSED STATEMENT OF ASSETS TRANSFERRED TO CHANDLER IMPROVEMENT COMPANY BY SAN MARCOS HOTEL COMPANY PER JOURNAL ENTRY MAY 31, 1934. Assets
Liabilities
Cash
$ 14,619.48
Accounts Receivable
255.81
Land, Buildings and
Operating Assets,
less depreciation re-
serves
696,498.07
Inventories and Sup-
plies
2,467.35
Notes Receivable -
Chandler Imp. Co.
756,653.66
E. E. Edwards - Acct.
Receivable
9,900.00
Prepaid Insurance
3,590.47
Insurance Deposit
785.75
Accounts Payable
$ 10,580.14
Bills Payable
2,803.75
Bonds Payable
5,095.94
Mortgage Payable
1,015.00
Pacific Mutual Life
Insurance Co.
946,436.62
Capital Stock
300,000.00
Surplus
218,839.14
$1,484,770.59
$1,484,770.59
Even though the transaction whereby the parent acquired the properties of petitioner was a taxable transaction and the parent realized a gain thereon, no tax was paid on this gain by the parent in 1934 because the excess of the fair market value of the assets acquired over the liabilities assumed was not sufficiently in excess of the cost of *257 petitioner's stock to overcome the loss reported on its return. The December 31, 1934, 1935 and 1936 balance sheets of the parent show "no value" for petitioner's stock. The balance sheets carried separate headings for assets and liabilities of "Chandler Improvement Company" and "San Mareos Hotel", as well as combined totals. The operating loss of petitioner for 1933 was included in a consolidated return filed by its parent for 1933, but for 1934, 1935 and 1936 the operating income or loss relative to the properties transferred by the petitioner was included in the income tax returns filed by the parent. The parent was the owner and operator of petitioner during these years. The petitioner was not dissolved after the transfer of its assets to the parent, although it conducted no business activities. However, annual meetings of the directors and/or stockholders, as well as two special meetings of the directors, were held. The minutes of these meetings reveal that their sole actions were to ratify the acts of officers and directors during the preceding year and to reelect directors and officers. Petitioner filed income tax returns for 1934, 1935 and 1936 on which it stated that *258 it was not engaged in business, that it had no assets or liabilities, its common stock had no value, and that it had merged with the parent. Petitioner filed all annual reports as required by the law of Arizona for the year 1915 through and including the year 1951. On May 25, 1936, the parent, for a consideration of $5,000, gave Robert Foehl an option to purchase all the operating properties and real estate used for the conduct of the San Marcos Hotel for the sum of $300,000. This option expired when Foehl did not comply with the terms of the agreement, but on August 7, 1936, the option to purchase, somewhat modified, was extended to May 1, 1937. Neither of these options referred to the sale of the stock of petitioner corporation. On March 11, 1937, Robert Foehl and E. W. Edwards entered into an agreement which was in the form of a letter written and signed by Edwards and addressed to Foehl, who affixed his signature, accepting and agreeing to the provisions thereof. This letter reads, in part, as follows: "We are together negotiating for the charter and all outstanding stock of the San Marcos Hotel Company, to buy in the name of the San Marcos Hotel Company the San Marcos Hotel *259 together with the golf course, lots surrounding the same, 1600 acres of desert land and all that property of every kind, nature and description as is particularly enumerated, described and set forth in that certain letter written by Mr. Robert Foehl to Chandler Improvement Company on May 25, 1936, and for the purpose of brevity the whole of which is herein referred to as San Marcos Hotel properties, all for a total consideration of $300,000.00 with interest at three per cent per annum from September 1, 1936, less the profits of the hotel for the 1936-1937 season, all to be consummated by May 1, 1937. "In the event this proposed purchase is consummated, I will be the sole stockholder owner of San Marcos Hotel Company, save and except such shares as may be issued for the proper and sufficient qualification of persons that may be selected to act as officers thereof. It is my desire in that respect that you be president and treasurer of such corporation with one share standing in your name, endorsed however in blank to me. * * *
"It is further agreed that upon the consummation of the purchase of the said properties by the San Marcos Hotel Company, as hereinabove first described, *260 that then and thereupon you will assign the said right and option to purchase the said San Marcos Hotel, now held by you, or will at that time in writing fully release the same, and that in return therefor the said company shall refund to you the $5000.00 which you have paid upon the said option so held by you upon said property, and which said sum of $5000.00 under the terms of such option, as now existing, will be credited upon the purchase price of the properties herein mentioned." On April 27, 1937, the San Marcos Hotel properties were sold to petitioner as nominee of Robert Foehl for the stated price of $300,000. Of this amount, $210,000 was covered by a mortgage executed by petitioner and $85,000 cash was paid in escrow. This latter amount was composed of $15,000 paid in by the parent and $70,000 paid in by W. T. Machan for San Marcos Hotel Company, nominee of Robert Foehl. The $85,000 was then paid from escrow to the parent and the balance of $5,000 originally paid by Robert Foehl was also released to the parent. E. W. Edwards then purchased all of the petitioner's outstanding stock, 3,000 shares, from the petitioner for $75,000, $70,000 of which was paid by the petitioner *261 to the escrow agent and $5,000 of which was reimbursed to Foehl for the amount he had expended in acquiring the option. Only the $75,000 paid in by Edwards in acquiring the petitioner's stock is includible in petitioner's equity invested capital, the petitioner having no accumulated earnings since May 1, 1937. Opinion The first issue raised is whether respondent erred in decreasing petitioner's equity invested capital by the sum of $300,000 for the purpose of computing its excess profits credit for the calendar years 1942, 1943 and 1944. Petitioner and respondent agree that $75,000 was paid into equity invested capital on or about May 1, 1937, as provided in section 718 of the Internal Revenue Code. [1]
*262 Respondent contends that the amount disallowed, representing the original investment of the parent in the subsidiary in 1914, was distributed, within the language of section 718(b)(1), [2] in 1933, and thus should be eliminated from petitioner's equity invested capital. Petitioner contends that the 1933 transaction was not a distribution, citing Northern Coal & Dock Co., 12 T.C. 42, and quoting: "The term 'distribution in liquidation' has been defined by the court as a distribution of assets to stockholders in cancellation and redemption of the stock; that is, a return to them in whole or in part of their capital investment in the corporation. A distribution made to a creditor against an indebtedness does not come within the statute." (Italics supplied] The underscored part of the above quotation is unequivocal. Petitioner *263 has not shown, however, that its parent was a creditor. On the contrary, the stipulation and evidence establish that the parent was indebted to petitioner. Moreover, the excess of value in petitioner's assets over and above all liabilities, including its debt to Pacific, was sufficient to enable the parent to recover more than its original investment in petitioner. As this Court said in Houston Natural Gas Corporation, 9 T.C. 570, at page 574: "* * * a subsidiary's transfer of all assets to a creditor parent is first applicable to a discharge of its indebtedness to the parent, and it operates with equal force to require the recognition of any gain realized by the parent from a full collection of such indebtedness. It is the excess of the assets' value above indebtedness that constitutes a liquidating distribution. * * *" [Italics supplied.] The return of the parent's original investment was a distribution within the statutory language of section 718(b)(1) and at the time it occurred it reduced petitioner's equity invested capital to zero. Since the petitioner had no accumulated earnings since May 1, 1937, respondent did not err in its determination that petitioner's *264 equity invested capital was only the $75,000 paid in by Edwards in acquiring petitioner's stock in 1937. Issue No. 2 Findings of Fact On November 14, 1939, petitioner obtained a loan of $98,352.51 from Jacques A. Gonat, which loan was evidenced by a promissory note secured by a second mortgage. The note called for interest at the rate of three per cent per annum after maturity, which date was on or before five years after the date of the loan. Subsequently this note was reduced to $84,852.51 by payments of $11,500 by E. W. Edwards to Gonat; and $2,000 paid by petitioner to Gonat. In addition, prior to June 14, 1943, of total interest of $9,632.65, all but $2,892.08 had been paid. On June 14, 1943, Gonat, as a creditor of petitioner, wrote a letter to E. W. Edwards, petitioner's principal and controlling stockholder, which read: "Mr. Pfaffle has told me that the hotel desires to liquidate my mortgage on a basis which will show it a saving on the face amount. The amount of the mortgage, according to my calculations, is now $84,852.51. "The proposal, as I understand it, is to pay me $50,000 immediately and $30,000 on July 1st 1944. I accept this proposal, with the understanding, *265 however, that should the hotel not be able to carry it out as agreed, I will reserve the right to claim the full amount. I think that when I receive the $50,000 I should also receive a check for the interest due me up to June 30th, of which I enclose the calculation. I assume that the unpaid $30,000 will continue to bear interest at the same rate." In a proceeding before the District Court of the United States for the District of Arizona, that court found: "At all times subsequent to May 1, 1937, all the issued and outstanding stock of the San Marcos Hotel Company was either owned by the defendant Edwards or by him and members of his immediate family, for whom Edwards acted as if the stock were his own, and, for the purposes of this case, the effect was as though Edwards were the owner at all times of all such issued and outstanding shares, except two qualifying shares of the directors. At all times on and after May 1, 1937, the defendant Edwards dominated and controlled the affairs of the defendant San Marcos Hotel Company and the actions of its Board of Directors and officers, and there existed such a unity of interest, ownership and control that the individuality or separateness *266 of the defendant San Marcos Hotel Company and the defendant Edwards did not exist for the purposes of any independent, uncontrolled action of the defendant San Marcos Hotel Company, its Board of Directors, or its officers." In its conclusions of law, it also stated: "At all times on and after May 1, 1937, mentioned in the findings of fact, the defendant San Marcos Hotel Company was the alter ego or business conduit of the defendant E. W. Edwards, and the liabilities and obligations of the defendant San Marcos Hotel Company to the plaintiff were and are in effect those of the defendant Edwards, who by his conduct, as set forth in the foregoing findings, has estopped himself from denying such liabilities and obligations." The petitioner paid to Gonat $50,000 on June 28, 1943, and $30,000 on April 1, 1944, which completed the payments aggregating $80,000 which Gonat agreed to accept in full settlement of the petitioner's mortgage indebtedness to him in the total amount of $84,852.51. The difference of $4,852.51, which the petitioner saved by reason of Gonat's cancelling the balance of the petitioner's mortgage indebtedness, was added to the $11,500 payment on the note which Edwards *267 had made to Gonat, and the petitioner credited to Edwards' account the sum of the two items, amounting to $16,352.51. The petitioner realized taxable income in the amount of $4,852.51 in 1944, by the cancellation by the mortgagee of that amount of mortgage indebtedness. Opinion The second issue raised is whether respondent erred in determining that the forgiveness by the mortgagee of $4,852.51 of the petitioner's mortgage indebtedness represented taxable income to the petitioner in 1944. In 1943 there was no suggestion that petitioner was insolvent. In that year petitioner was indebted to Gonat in the amount of $84,852.51, and informed Gonat that it desired to liquidate its mortgage indebtedness "on a basis which will show it a saving on the face amount". Petitionr was to pay Gonat $50,000 immediately and $30,000 on July 1, 1944. Gonat accepted that proposal and petitioner made the payments aggregating $80,000, thus effecting a saving of $4,852.51. The $4,852.51 constituted a discount for the advance payment of the petitioner's note, Gonat stating in the letter to Edwards, "I accept this proposal with the understanding, however, that should the Hotel not be able to carry *268 it out as agreed, I will reserve the right to claim the full amount". That such discount or cancellation of indebtedness may be income to the debtor is well established. Commissioner v. Jacobson, (1949) 336 U.S. 28. The obvious consideration for the forgiveness of $4,852.51 was the payment by petitioner of the debt before it was due. Reliable Incubator and Brooder Co., 6 T.C. 919; Cf. Helvering v. American Dental Co., 318 U.S. 322. Petitioner contends that Gonat and Edwards made the arrangement which saved the $4,852.51 and that petitioner received no benefit, financial or otherwise, from the arrangement. Petitioner, however, was the debtor, and its debt was reduced by $4,852.51. That it chose to pass on the saving to Edwards does not disturb the fact that it received the saving originally. The close identification of Edwards and petitioner does not materially affect this conclusion that petitioner benefited, except as it throws light on the manner in which the transaction was handled with respect to Edwards. In so far as this particular transaction was concerned, no duty or obligation running from petitioner to Edwards has been shown. *269 Petitionr did not claim the benefits of section 22(b)(9) of the Internal Revenue Code by filing with its 1944 income tax return the required consent permitting the adjustment to the basis of the property as prescribed by section 113(b)(3). Respondent, therefore, did not err in including the $4,852.51 in petitioner's taxable income. Issue 3 Findings of Fact Pursuant to the terms of the agreement entered into by Foehl and Edwards on March 11, 1937, petitioner entered into an employment contract with Foehl dated May 1, 1937, wherein Foehl was employed as manager by petitioner for a period of 10 years beginning on the first day of May, 1937. The paragraphs of that agreement, in so far as they are pertinent, relating to Foehl's compensation, read as follows: "5. To pay to the said Robert Foehl, as and for compensation for his services rendered hereunder: "(a) The sum of Six Thousand ($6,000.00) Dollars annually, payable Five Hundred ($500.00) Dollars per month on the 1st day of each and every month, commencing on the 1st day of June, 1937. "(b) The sum of ($9,679.52) Nine Thousand six hundred seventy-nine - 52/100 Dollars on the 2nd day of May, 1937, Seven *270 Thousand two hundred fifty nine and 65/100 ($7,259.65) Dollars on the 2nd day of May, 1938, and Seven Thousand two hundred fifty nine and 65/100 ($7,259.65) Dollars on the 2nd day of May, 1939. "(c) A sum equal to twenty per cent (20%) of the net profits of the San Marcos Hotel Company for each preceding fiscal year of said Company during the time of this agreement. Said payments to be made on the 1st day of May of each year, being the end of the fiscal year of the, Company, commencing on May 1, 1938. The said net profits shall be determined by deducting from the gross receipts of said San Marcos Hotel Company all current operating expenses, including interest and taxes, incurred and all sums actually paid out or incurred for repairs, but without deducting for mere book depreciation." Under the terms of the employment contract dated May 1, 1937, referred to above, Foehl was employed as manager by the petitioner commencing May 1, 1937. He devoted his time exclusively to such management until February 1942, at which time, because of World War II, the petitioner granted Foehl's request for a leave of absence for the duration of the war emergency. Upon Foehl's return to the United *271 States in June 1945, he learned that petitioner had employed John H. Quarty as manager. A dispute arose between Foehl and petitioner as to the amount to which Foehl was entitled because of petitioner's action. When that dispute could not be resolved, Foehl brought suit in the United States District Court for the District of Arizona, naming petitioner and Edwards as defendants. The cause was tried by United States District Judge David W. Ling in April 1947, and on Paril 8, 1948, the District Court promulgated the Court's findings of fact and conclusions of law, the pertinent portions of which are as follows: "13. In thus granting the plaintiff a leave of absence, it was intended by the defendants that the rendition of any services of the plaintiff should be waived by San Marcos Hotel Company during the period of his leave; that all of plaintiff's rights under his agreement of May 1, 1937, should be preserved unimpaired and that plaintiff should receive all the benefits of his agreement during his absence, including without restriction plaintiff's share of the net profits from the operation of the defendant San Marcos Hotel Company, computed as provided by the agreement. There was *272 no intention to deprive plaintiff of any of the benefits of his agreement during his absence. * * *
"15. Shortly after February 28, 1942, plaintiff, accompanied by Edwards, went to Los Angeles to report for duty with the Lockheed Overseas Corporation. Plaintiff continued to give attention to the business of the San Marcos Hotel Company whenever his duties with the Lockheed Corporation would permit, until about June 4, 1942, when plaintiff left the United States for Great Britain. "As of April 30, 1942, plaintiff voluntarily went off the payroll of the San Marcos Hotel Company, and waived his right to the $500 a month salary provided to be paid to him by subdivision (a) of Article 5 of plaintiff's agreement with the defendant San Marcos Hotel Company. * * *
"21. Upon his return from overseas, and at all times thereafter, the plaintiff Foehl was in all respects ready, able and willing to perform the provisions of his agreement with the defendant San Marcos Hotel Company dated May 1, 1937. Shortly after his return, and during July, 1945, the plaintiff duly and in good faith tendered to the defendants, and each of them, full performance on his part of his agreement of *273 May 1, 1937, with the defendant San Marcos Hotel Company, and requested that he be given the means of performance and access to the Hotel properties. Contrary to the provisions of plaintiff's said agreement, and without any justification therefor, the defendants refused and denied plaintiff the means or opportunity of performing the contract on his part, prevented him from performing his agreement, and refused to recognize plaintiff's rights under his agreement with the defendant Hotel Company. Both of said defendants rendered impossible substantial, or any, performance on the part of plaintiff of the provisions of that agreement to be performed by him. * * *
"23. Defendant San Marcos Hotel Company has not paid to the plaintiff any part of the 20% of the net profits of San Marcos Hotel Company from January 1, 1942, to May 1, 1947, the date of the expiration of said agreement of May 1, 1937, computed as provided in subdivision (c) of Article 5 of such agreement. "24. Defendant San Marcos Hotel Company has not paid to the plaintiff anything on account of the $500 per month payable under subdivision (a) of Article 5 of the agreement of May 1, 1937, from May 1, 1942, to May 1, 1947, the *274 date of the expiration of such agreement. As hereinabove found, plaintiff voluntarily waived all right to receive such monthly payments after April 30, 1942, and until his return from the leave of absence July 1, 1945. During the period July 1, 1945, to date of trial, the only compensation and earnings which plaintiff has derived for his personal services has been $500 per month paid him by the Soboba Hot Springs Corporation beginning May 1, 1946, to the date of the trial of this action. "25. As to the amounts provided to be paid plaintiff by the defendant San Marcos Hotel Company in subdivision (b) of Article 5 of the agreement of May 1, 1937, viz., $9,679.52 payable May 2, 1937, $7,259.65 payable May 2, 1938, and $7,259.65 payable May 2, 1939, or a total of $24,198.82, the ledger account of the plaintiff on the books of the defendant San Marcos Hotel Company showed a balance unpaid to the plaintiff amounting to $20,974.03, and plaintiff has admitted that such amount is correct. Defendants introduced some evidence intended to establish that additional amounts aggregating some $3,259.53 should be credited upon such balance, but the evidence respecting such credits did not clearly *275 establish the defendants' right thereto, and was of such nature as should be taken into consideration in an accounting. Otherwise, no part of the sums provided to be paid plaintiff by subdivision (b) of Article 5 of the agreement of May 1, 1937, has been paid to plaintiff. "26. From April 30, 1942, to the date of trial in April, 1947, the operations of the defendant San Marcos Hotel Company necessarily involved a large number of varied types of transactions; and during all of said period the defendants have been in the possession and control of all the books, records and accounts of the defendant Hotel Company. Defendants have admitted that if liability on their part were established with respect to subdivision (c) of Article 5 of the agreement of May 1, 1937, an accounting would be in order. An accounting is therefore necessary in order to determine the amount due plaintiff as 20% of the net profits derived by the defendant San Marcos Hotel Company from its operations January 1, 1942, to May 1, 1947, computed as provided in the agreement between that defendant and the plaintiff, as well as to determine the amount, if any, of the additional credit which the defendant San Marcos Hotel *276 Company is entitled to apply on the balance of plaintiff's claim of $20,974.03 under subdivision (b) of Article 5 of the agreement of May 1, 1937. * * *
"Conclusions of Law * * *
"2. The agreement of May 1, 1937, between plaintiff and the defendant San Marcos Hotel Company, established an employer-employee relationship between the parties thereto. * * *
"7. All rights of the plaintiff under his agreement of May 1, 1937 with defendant San Marcos Hotel Company were preserved during plaintiff's leave of absence, and the obligations of the defendant San Marcos Hotel Company to the plaintiff under such agreement remained binding and in full force and effect. "8. Plaintiff is entitled to all the benefits of his agreement of May 1, 1937, with defendant San Marcos Hotel Company during his leave of absence, except payment to him by San Marcos Hotel Company of $500 per month, which plaintiff voluntarily waived for the period of his leave. "9. By their acts and conduct as set forth in the foregoing findings of fact, the defendants, without justification, breached the agreement of May 1, 1937, of plaintiff with the defendant San Marcos Hotel Company while the same was *277 in full force and effect, and wrongfully and without justification renounced and repudiated such agreement in such manner as to amount to a total breach thereof, for which plaintiff is entitled to recover as in these Conclusions of Law set forth. * * *
"12. Plaintiff is entitled to judgment against the defendants, and each of them, for: "(a) A sum equal to $500 per month from July 1, 1945, to May 1, 1947, provided by subdivision (a) of Article 5 of the agreement of May 1, 1937, less plaintiff's earnings during that period amounting to $6,000; "(b) The sum of $20,974.03, the balance unpaid to plaintiff under the provisions of subdivision (b) of Article 5 of the agreement of May 1, 1937, less any amounts which an accounting may establish as being properly chargeable to plaintiff as an additional credit upon said balance, together with interest at the rate of 6% per annum until paid on the balance so established, computed on the balance of each installment from the due date thereof specified by said subdivision (c) of Article 5; "(c) A sum equal to 20% of the net profits of the defendant San Marcos Hotel Company from January 1, 1942, to May 1, 1947, computed and determined *278 in the manner provided by subdivision (c) of Article 5 of the agreement of May 1, 1937. "13. Plaintiff is entitled to an accounting from the defendants of the 20% of the net profits of the defendant San Marcos Hotel Company from January 1, 1942, to May 1, 1947, computed and determined in the manner provided by subdivision (c) of Article 5 of the agreement of May 1, 1937. "14. Because of the complexity of the matters involved and for the reasons stated in the foregoing findings, reference to a master should be made to take and state an account, and to ascertain, in accordance with subdivision (c) of Article 5 of the agreement of May 1, 1937, and report to the Court the amount of the 20% of the net profits of the defendant San Marcos Hotel Company from January 1, 1942, to May 1, 1947, and to ascertain and report the amount of any additional credits to which the defendants may be entitled on the balance of $20,974.03 found by Conclusion of Law 12(b) to be unpaid to the plaintiff. In accordance with paragraph 14 of the District Court's Conclusions of Law cited above, two firms of certified public accountants made a joint accounting and, on the basis of their statement of account, *279 the parties to the suit, on September 12, 1949, agreed to settle the case. On September 13, 1949, the petitioner paid to Foehl the amount which, it was agreed, was owing to him in accordance with the District Court's Findings of Fact and Conclusions of Law, namely, $79,996.53. Simultaneously with the payment by the petitioner to Foehl of the $79,996.53, the parties entered into a stipulation and order for dismissal of the cause and, pursuant to that stipulation, the court, on September 26, 1949, entered an order dismissing the cause with prejudice and without costs to either party. On November 8, 1949, the petitioner filed with respondent a claim for refund of income tax for the year 1944 in the amount of $5,495.14, plus interest. This claim contains the following explanation: "In accordance with Agreement of Settlement of September 12, 1949, and a Resolution of the Board of Directors of the San Marcos Hotel Company of the same date, Mr. Robert Foehl was paid salary and additional compensation applicable to the period May 1, 1943, to April 30, 1944, in the amount of $10,331.37 under Article 5(a) and 5(b) of the Management Contract dated May 1, 1937, and $1,256.66 interest on *280 amounts due him under Article 5(b) of the same contract. These amounts should have been accrued and deducted on return for the year 1944." The petitioner also claimed a deduction for the same expense on its Federal income tax return for the year 1949. The petitioner followed the accrual method of accounting. It did not pay or accrue on its books for the taxable year 1944 any amount due Foehl under his employment contract, nor did it claim any amount as a deduction therefor on its income tax return for 1944. Opinion The third issue is whether the respondent erred in refusing to allow, as a deductible expense for the year 1944, an amount of $11,588.03 paid during the year 1949. Petitioner herein, which was on the accrual basis, did not pay or accrue on its books during 1944 any amount as owing to Foehl under his employment contract. Further, it did not claim any amount as a deduction on its income tax return for 1944, or indicate that it admitted any liability to Foehl by reason of the contract. Secs. 23 (a) (1) (A), 43, 48 of the Internal Revenue Code. Petitioner seeks to accrued retroactively, as of December 31, 1944, a portion of the total amount paid *281 to Foehl in 1949, which it contends is applicable to 1944, and to deduct that amount as a 1944 expense. Since the petitioner filed its tax returns on the accrual basis, expenses are deductible in the year in which they accrue. Petitioner herein did not in 1944 recognize liability under its employment contract with Foehl but, on the contrary, in a subsequent year contested it in the District Court of Arizona. As the Supreme Court of the United States stated in Security Flour Mills Co. v. Commissioner, ( 1944) 321 U.S. 281: "It is settled by many decisions that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent, and this principle is fully applicable to a tax, liability for which the taxpayer denies, and payment whereof he is contesting. * * *" See also Dixie Pine Products Co. v. Commissioner, ( 1944) 320 U.S. 516; Lucas v. American Code Co., Inc., (1930) 280 U.S. 445. Respondent did not err in his determination. Decision will be entered under Rule 50. Footnotes
1. SEC. 718. EQUITY INVESTED CAPITAL. (a) Definition. - The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b) - (1) Money Paid In. - Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital; (2) Property Paid In. - Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. If the property was disposed of before such taxable year, such basis shall be determined under the law applicable to the year of disposition, but without regard to the value of the property as of March 1, 1913. If the property was disposed of before March 1, 1913, its basis shall be considered to be its fair market value at the time paid in. If the unadjusted basis of the property is a substituted basis, such basis shall be adjusted, with respect to the period before the property was paid in, by an amount equal to the adjustments proper under section 115 (1) for determining earnings and profits;↩
2. (b) Reduction In Equity Invested Capital. - The amount by which the equity invested capital for any day shall be reduced as provided in subsection (a) shall be the sum of the following amounts - (1) Distribution In Previous Years. - Distributions made prior to such taxable year which were not out of accumulated earnings and profits;↩